**LARRY JAMES OLDSMOBILE–PONTI-AC–GMC TRUCK CO., INC., on behalf of itself and all others similarly situated, Plaintiff**

v.

**GENERAL MOTORS CORPORATION, Defendants.**

No. 2:94CV90–D–B.

United States District Court,
N.D. Mississippi,
Delta Division.

Feb. 8, 1996.

Jack F. Dunbar Edward A. Moss, Oxford, Mississippi, Michael B. Hyman, John Hester Ward, William Henry London, Chicago, Illinois, Steven A. Asher, Philadelphia, Pennsylvania, Paul I. Guest, Jr., Paoli, Pennsylvania, James Clinton Garland, Michael Hayes Freeman, and James C. Garland, III, Tulsa, Oklahoma, for Plaintiff.

Ronald G. Peresich, Biloxi, Mississippi, Jeffrey A. Lipps, and Michael H. Carpenter, Columbus, Ohio, for Defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

■ Plaintiff Larry James Oldsmobile–Pontiac–GMC Truck Co., Inc. ("James") instituted this unfair business practices action against Defendant General Motors Corporation ("GM") on behalf of current and former GM new vehicle dealers in Mississippi. James contends that GM's practice of assessing a mandatory advertising charge equal to 1% of the manufacturer's suggested retail price ("MSRP") on each new vehicle purchased violates the Federal Automobile Dealers Day In Court Act ("ADDCA"), 15 U.S.C. §§ 1221 *et seq.*, and the Mississippi Motor Vehicle Commission Law ("MMVCL"), Miss. Code Ann. §§ 63–17–51 *et seq.* This cause comes before the court upon Plaintiff's Motion for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. James seeks to certify a class defined as:

> [a]ll persons or entities who were licensed and franchised Chevrolet, Pontiac, Cadillac, Oldsmobile, Buick, Geo, or GMC Truck new vehicle dealers in Mississippi at any time from August 1, 1988 through the present time excluding defendant, its affiliates, divisions and subsidiaries.

Plaintiff's Motion For Class Action Certification ¶ 18. The court finds Plaintiff's motion well taken and shall certify the proffered class subject to certain modifications as set out below.

## FACTUAL BACKGROUND [1]

James, a Mississippi business corporation with its principal place of business located in Corinth, Mississippi,[2] is a licensed and franchised Oldsmobile, Pontiac and GMC Truck dealer for GM and a former licensed and franchised Cadillac dealer. GM is a Delaware corporation, qualified to do business in Mississippi, with its principal office in Detroit, Michigan. GM manufactures, assembles and distributes new vehicles through its various unincorporated operating divisions such as Chevrolet, Buick, Pontiac, Cadillac, Oldsmobile and GMC Truck.

James commenced this suit on June 15, 1994, alleging in its Complaint that GM imposes on its dealers a mandatory 1% charge, the "GM Marketing Adjustment," on each new vehicle purchased. The monies subsequently collected by GM are used exclusively for advertising purposes through "marketing initiatives" as set up through GM's various divisions. Plaintiff's Amended Complaint ¶¶ 11, 13. A dealer cannot purchase any new vehicle manufactured by GM without paying the 1% advertising charge. *Id.* ¶ 12. James contends that GM's imposition of the 1% charge violates the ADDCA[3] and the MMVCL[4] and that it and the putative class

---

1. When ruling upon a motion for class certification, the court must take the substantive allegations contained in the plaintiff's complaint as true. *In re Catfish Antitrust Litigation*, 826 F.Supp. 1019, 1033 (N.D.Miss.1993) (citing cases). The court's recitation of the facts in this case reflects this rule.

2. When referring to the individual, the court shall use Mr. James' full name, "Larry James," to avoid confusion with the corporation.

 Harry Vickery Chevrolet–Oldsmobile Co., Inc. ("Vickery"), a former GM dealer in Greenville, Mississippi, was also a named plaintiff in this action. However, the court granted Vickery's Motion for Leave to Withdraw One Named Plaintiff by an order dated June 7, 1995, leaving James as the only named representative of the proposed class.

3. Specifically, the ADDCA provides in part that
 [a]n automobile dealer may bring suit against any automobile manufacturer engaged

in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer ... to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer.
 15 U.S.C. § 1222.

4. Relevant portions of the MMVCL provide that

 (1) It is unlawful and a misdemeanor:
 (c) For a manufacturer, a distributor, a wholesaler, a distributor branch or division, a factory branch or division, or a wholesaler branch or division, or officer, agent or other representative thereof, to coerce, or attempt to coerce, any motor vehicle dealer:

members it seeks to represent are entitled to compensatory damages in excess of $50,000 each, punitive damages, injunctive relief, and attorneys' fees and expenses. *Id.* § VI.

James asserts that it meets the requirements under Rule 23 in that (1) the class is so numerous that joinder would be impracticable; (2) its claims are typical of those of the class; (3) it will fairly and adequately protect the interests of the class in that its interests are not antagonistic to those of the class; (4) its claims involve common questions of fact and law which predominate over any issues unique to individuals in the class; and (5) class action treatment is the superior method for adjudication of this controversy. *Id.* ¶ 15. GM vehemently opposes certification of the proposed class and contends that James has failed to satisfy the requirements of Rule 23.

This court has jurisdiction over the controversy pursuant to 15 U.S.C. § 1222 and 28 U.S.C. §§ 1331, 1332 and 1367.

## DISCUSSION

### I. THRESHOLD ARGUMENTS

█ As an initial matter, GM argues that James lacks standing to represent Buick, Cadillac, Chevrolet and Geo dealers because it is not a dealer for any of those vehicle lines. Mem. of Def. GM In Opp'n To Motion For Class Certification (hereinafter "Def.'s Brief") at 19–22. Plaintiff never sold Buick, Chevrolet or Geo lines and its association with Cadillac ended over five years ago. GM submits that only dealers from these particular divisions would have standing to challenge the 1% charge as applied to their respective divisions. Thus, GM submits that James is not a member of the entire class it purports to represent.

To satisfy the membership requirement of Rule 23, the class plaintiff must have the *same interests* and must suffer the *same*

4. To contribute or pay money or anything of value into any cooperative or other advertising program or fund.
Miss.Code Ann. § 63–17–73 (Supp.1995).

**5.** The 1% marketing mark-up was instituted in conjunction with various Marketing Initiatives set up by GM's divisions. For example, GMC Truck Division implemented its initiative on or

*injuries* as the class members; where the representative suffers injuries that are different from those suffered by the members of the class, the named plaintiff lacks the requisite standing or membership. *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 [97 S.Ct. 1891, 1896–97, 52 L.Ed.2d 453] (1976).

Def.'s Brief at 20–21 (emphasis in original).

The court agrees with GM's statement of the law, but not with GM's application of the law in regard to James as the class representative. James alleges in its Complaint that GM illegally required it, along with every other Mississippi GM dealer, to pay the 1% marketing adjustment in order to purchase new GM vehicles. This 1% charge did not waver in amount or application along division lines; once implemented, every dealer had to pay it to purchase new vehicles. GM raised a similar standing argument in front of the district court for the District of Minnesota in a substantially identical action. *Lockwood Motors, Inc. v. General Motors Corp.,* 162 F.R.D. 569, 574 (D.Minn.1995). The *Lockwood* Court found GM's reasoning unpersuasive and held that

[t]he fact that other dealers were required to pay the charge at a different time or based on a different brand of GM vehicle [5] does not affect the existence of this injury.

*Id.* James has standing by virtue of its occupation as a GM dealer; it "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant ..., the injury fairly can be traced to the challenged action, and [it] is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (internal quotations and citations omitted). Any dissimilarities in the type or degree of injury suffered by

about September 1, 1988; Cadillac Motor Car Division implemented its initiative in or about July 1989; Oldsmobile Motor Division in or about July 1989; Pontiac Motor Division in or about July 1990; and Buick Motor Division on or about August 1, 1990. Plaintiff's Amended Complaint ¶¶ 5–9.

James and that purportedly suffered by class members are better addressed under the auspices of Rule 23, and not as an obstacle to standing.

## II. FEDERAL RULE OF CIVIL PROCEDURE 23(a)

James must meet the prerequisites set out in Rule 23(a), in addition to satisfying either 23(b)(1), (2), or (3), in order to maintain this suit as a class action. Fed.R.Civ.Pro. 23; *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 573 (5th Cir.1995) (burden of proof on party seeking class certification); *see also Moore Video Distribs., Inc. v. Quest Entertainment, Inc.*, 823 F.Supp. 1332, 1338 (S.D.Miss.1993) ("[P]laintiff must make a prima facie showing in its pleading that it satisfies Rule 23."). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). James contends that it meets the prerequisites [6] under 23(a) [7] and also satisfies 23(b)(3). Rule 23(b)(3) permits certification if

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of

any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). If the court is satisfied, after "rigorous analysis," that all prerequisites have been met, the class may be certified. *Falcon v. General Tel. Co.*, 815 F.2d 317, 319 n. 2 (5th Cir.1987). However, "[t]he district court has wide discretion in deciding whether to certify a class action." *Applewhite*, 67 F.3d at 573; *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 471–72 (5th Cir.), *reh'g denied*, 785 F.2d 1034 (5th Cir. 1986).

### A. Class Definition

GM contends in its brief that James' definition of the proposed class has two inherent problems. The first is that "the class includes time periods when the marketing initiatives and/or programs were not even in force." Def.'s Brief at 16. The second problem, according to GM, is that James' definition "treats this case as if it involved a single, static program ... [when t]his is not so." *Id.* The court addresses each of these objections in turn.

### 1. Time Periods

■ James defines the proposed class as

> All persons or entities who were licensed and franchised Chevrolet, Pontiac, Cadillac, Oldsmobile, Buick, Geo, or GMC Truck new vehicle dealers in Mississippi at any time from *August 1*, 1988 through the present time excluding defendant, its affiliates, divisions and subsidiaries.

Plaintiff's Amended Complaint ¶ 14 (emphasis added). However, as GM points out and James concedes, the 1% marketing adjust-

---

6. Rule 23(a)'s requirements are generally referred to as prerequisites of "numerosity, commonality, typicality, and adequacy of representation." *General Tel. Co. v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982); *Applewhite*, 67 F.3d at 573.

7. In addition to the four express requirements set out in the rule, courts have recognized two im-

plicit additional criteria. First, the class must be capable of identification and definition. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam); *McGuire v. International Paper Co.*, 1994 WL 261360, *3 (S.D.Miss.1994). The second inquiry is whether the representative party is a member of the proposed class. *McGuire*, 1994 WL 261360, *3.

ment was not implemented until *September* 1988 with the inception of the Chevrolet and GMC Truck marketing initiatives, and then only applied to Chevrolet and GMC Truck dealers. Def.'s Brief at 16. Oldsmobile and Cadillac dealers were not charged until the summer of 1989, and Buick and Pontiac dealers until the summer of 1990, the dates coinciding with the inception dates of the division initiatives. *Id.* GM argues that the class definition must be redrawn to take into account these different dates.

James adequately answers these objections by suggesting that "the class to be ultimately certified should consist of all those persons who have been GM dealers at any time after September 1, 1988 and who have paid the mandatory 1% MSRP on any GM vehicles and who are not otherwise excluded from the class as affiliates of GM." Plaintiff's Reply Mem. In Supp. Of Class Certification (hereinafter "Plaintiff's Rebuttal Brief") at 19 n. 15. Such a definition takes into account the initial starting date of the 1% charge (September 1988) and GM's concerns about the different inception dates for division dealers.[8]

2. Different Initiatives[9]

GM's second objection with the proposed class definition focuses on the myriad differences among the individual division marketing initiatives. Def.'s Brief at 16–19. For example, some divisions (GMC Truck, Chevrolet, and Pontiac) limit their support solely to the marketing of new vehicles, while other divisions (Oldsmobile and Cadillac) support marketing of both new and used vehicles as long as certain conditions are met. Reimbursements to individual dealers also differ along division lines. The divisions have also implemented a mosaic of strategies in refer-

ence to support of dealer marketing associations.

■ Despite GM's in-depth discussion of its different marketing strategies, the initiatives are not the subject of James' challenge. James' Complaint asserts that only the 1% MSRP assessment is illegal, and it was and is uniformly applied to all GM dealers irrespective of division. Whether the new vehicle purchased is a Buick, Chevrolet, Pontiac, Cadillac, Oldsmobile, Geo or GMC Truck, GM requires the dealer to pay 1% of the MSRP in order to close the deal. GM has failed to demonstrate any significant[10] difference in regard to the 1% MSRP assessment so as to justify denying class certification.

B. Numerosity

■ The first explicit requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a). Practicability of individual joinder is the main focus, but a court may also consider other factors including the number of claimants and the nature of the action. *Watson et al. v. Shell Oil Co.,* 979 F.2d 1014, 1022 (5th Cir.1992) (noting that numerosity requirement imposes no mechanical rules); *see also General Tel. Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980); *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir.1981); *Garcia v. Gloor,* 618 F.2d 264, 267 (5th Cir.) (noting court should also consider "ease of identifying [the class's] members and determining their addresses, facility of making service on them if joined and their geographic dispersion."), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981).

---

**8.** The court|notes that the *Lockwood* Court used a similar definition when it certified the proposed class in a substantially identical litigation:

All persons who were licensed and franchised Buick, Cadillac, Chevrolet, GMC Truck, Oldsmobile and Pontiac new vehicle dealers in Minnesota from the effective dates of each marketing initiative through the present time excluding defendant, its affiliates, division and subsidiaries.

*Lockwood,* 162 F.R.D. at 582.

**9.** While GM labels some of its division marketing strategies "initiatives" and others "programs,"

the court labels them all as initiatives to save space and avoid confusion.

**10.** GM points out one difference in regard to the 1% MSRP assessment in its brief. Chevrolet capped its marketing support at $250.00 per vehicle purchased by dealers (a $25,000 MSRP cap). GMC Truck also formerly had such a cap. However, the court is of the opinion that such a slight variance is insufficient to destroy the class definition and, in any event, goes mainly to prove any appropriate amount of damages.

■ GM asserts that joinder is practical in this case because "each dealer is known and readily identifiable by name and address, each is easily subject to service of process and notice, each is in Mississippi, and each is a substantial, independent business enterprise."[11] Def.'s Brief at 45. However, James seeks to represent not only current GM dealers, but also former GM dealers who are not as readily identifiable and may no longer reside in Mississippi. Furthermore, James has submitted evidence which suggests that current franchised Mississippi GM dealers alone number approximately one hundred and eight (108). Ex. A (document prepared by Mississippi Motor Vehicle Commission), att. Plaintiff's Mem. In Supp. Of Motion For Class Certification (hereinafter "Plaintiff's Brief"). Former dealers appear to be even more numerous, numbering closer to 133 (making the class total approximately two hundred and forty-one (241)). Def.'s Brief at 37. Faced with these numbers, and the fact that dealers are spread over the entire state, it is pellucid that James has met the numerosity prerequisite. *Moore Video Distribs., Inc. v. Quest Entertainment, Inc.*, 823 F.Supp. 1332, 1339 (S.D.Miss.1993) (noting that numbers over 40 are usually certified; asserting class of 70 is sufficiently large to satisfy 23(a)).

C. Commonality

■ The second prong of Rule 23(a) requires an inquiry into whether "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a). The Fifth Circuit has held that the threshold of "commonality" is not a high one. *Applewhite*, 67 F.3d at 573; *Jenkins*, 782 F.2d at 472. However, "class certification requires at least two issues in common." *Applewhite*, 67 F.3d at 573; *cf. Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir.1993) (requiring all class members share at least one element of cause of action); *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982); *Moore Video*, 823 F.Supp. at

1339 ("The rule requires only that resolution of the common questions affect all or a substantial number of the class members.").

■ The central question to be resolved by this litigation is whether the 1% MSRP assessment is prohibited by the ADDCA and the MMVCL. This issue is common to all GM dealers in that all had to pay the charge in order to receive new vehicles from the manufacturer. The fact that the dates of imposition differ does not alter its ultimate commonality as applied to GM dealers. If each class member proceeded individually, each would have to prove the illegality of the 1% assessment. "Obviously, individual actions designed to prove identical elements would completely destroy any notions of judicial economy." *In re Catfish Antitrust Litigation*, 826 F.Supp. 1019, 1034 (N.D.Miss. 1993). Whether or not individual questions predominate over this common issue is better addressed under the auspices of Rule 23(b)(3), but James has demonstrated commonality sufficient to satisfy 23(a).

D. Typicality

■ The third prong of Rule 23(a) requires the party seeking class certification to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a). Typicality often overlaps with commonality and adequacy of class representation. *In re Catfish*, 826 F.Supp. at 1034. However, a prominent consideration exclusive to the typicality requirement is whether "there is an absence of an adverse interest between the representative parties and other members of the class." *Id.* (citing cases). Typicality does not require the claims of the class members to be identical, however. *Id.* (citing numerous cases). Instead, a typical claim is one which members of the proposed class should reasonably be expected to raise. *Id.* Substantial similarity

---

**11.** The court notes that the *Lockwood* Court rejected GM's identical objection to the numerosity requirement in that litigation. *Lockwood*, 162 F.R.D. at 574–75. Similarly, district courts in Pennsylvania and Ohio also held the numerosity requirement had been met and subsequently certified classes in cases involving substantially

identical claims against GM. *Race Buick–Pontiac–Cadillac–Oldsmobile–GMC, Inc. v. General Motors Corp.*, Civ. No. 94–25–E, 1994 WL 868022 (W.D.Penn. Oct. 11, 1994); *Kasper Buick–GMC Truck Inc. v. General Motors Corp.*, Case No. C–2–88–944 (S.D.Ohio Aug. 2, 1989).

of legal theories will also satisfy this third requirement despite strong factual differences. *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir.1985).

■ James asseverates that its claims are typical of the class due to the "single, uniform scheme to assess unlawful payments for an advertising fund" which is under attack in the instant litigation. Plaintiff's Brief at 13. GM contends, however, that James' claims are atypical due to the peculiar circumstances of James' dealership. James' dealership is located two miles from the Tennessee border, with Tennessee dealers constituting the bulk of the competition; the dealership only carries three GM lines—Pontiac, Oldsmobile and GMC Truck; James' marketing approach is almost exclusively local; the dealership's television advertising is minimal; and the dealership is located in a small, economically-depressed town. Def.'s Brief at 59–60.

Whether or not these facts may be atypical when compared with a standard Mississippi GM dealer, they have no impact on the court's consideration of the typicality of the material claims alleged in James' Complaint. James submits that GM uniformly imposed an illegal mandatory 1% MSRP assessment on all Mississippi GM dealers. "[I]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish,* 826 F.Supp. at 1035 (citing cases). The 1% charge applies equally to dealers notwithstanding (1) the geographic location of the dealership, (2) which brand of GM vehicles the dealer purchases, (3) the marketing strategy utilized, or (4) the local economy in the dealership's area. "The diversity of named plaintiffs who differ in their methods of operation and conduct is often cited by defendants as an impediment to class certification. However, as long as the substance of the claim is the same as it would be for other class members, then the claims of named plaintiffs are not atypical." *Id.* at 1036. The factual variances cited by GM are incidental to the legal theory under which James brings this lawsuit. Rule 23(a)'s typicality requirement is met in this matter.

E. Adequacy of Representation

■ The fourth and final requirement of Rule 23(a) is that the party seeking class certification show that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). This entails an inquiry into whether plaintiff's counsel have the qualifications and experience necessary to competently conduct such a litigation and whether the plaintiff's interests are antagonistic to those of the class. *In re Catfish,* 826 F.Supp. at 1037; *see also Jenkins,* 782 F.2d at 472 (noting that court should also question whether representative has sufficient stake in outcome).

■ GM contests both facets of Rule 23(a)'s fourth prong. GM complains that James' counsel have played an "overarching" role in this litigation, in essence substituting themselves as the class representatives. The court disagrees and summarily rejects this argument. The record evinces no evidence that Plaintiff's counsel have assumed the dominant role in this litigation. Moreover, Plaintiff's counsel have substantial experience with class litigations as well as familiarity with particular issues in the case sub judice. To date they have competently and vigorously maintained this suit and the court is satisfied of their qualifications. *Horton v. Goose Creek Indep. Sch. Dist.,* 690 F.2d 470, 484 (5th Cir.1982) (noting that "adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel"), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983).

GM's main attack focuses on the second component of the rule: James' alleged inability to adequately represent the interests of the putative class members. GM offers in support of this contention (1) affidavits from dealers across the state opposing James as the class representative, (2) James' insulated environment and unique marketing position, (3) the fact that James does not carry Buick, Cadillac or Chevrolet lines, (4) James' lower business volume, (5) James' geographic location, (6) Larry James' negotiations to sell his dealership and (7) Larry James' unfamiliarity with the marketing initiatives. Def.'s Brief,

at 22–44. The court addresses each concern in turn.

### 1. Opposing Affidavits

GM sets forth as evidence affidavits from approximately sixty-five (65) GM dealers who oppose James' presumed representation of their interests. James submits that the court should accord the affidavits no weight because "they arise in suspect circumstances and they are irrelevant." Plaintiff's Rebuttal Brief at 7. According to James, the affidavits are the result of an "amazingly intense campaign by GM" to take advantage of the manufacturer's inherent leverage over dealers. *Id.* at 8 ("If vehicles do not arrive, the dealer cannot sell."). James cites extensively from *Kleiner v. First Nat'l Bank,* 751 F.2d 1193 (11th Cir.1985), for the proposition that such an "extreme and brazen solicitation" should not be rewarded by the court.[12] The affidavits also were acquired within a short amount of time; all but two were signed in March with forty (40) signed between March 1 and March 10. The bulk of the affidavits are identical, apart from the dealership location and the dealers' perfunctory signatures.[13] Finally, James asserts that the affidavits are misleading in that they are couched in advertising terms instead of differentiating between the marketing initiatives and the 1% MSRP assessment.

■ On the opposite side of the coin, GM asserts that not only should the court afford its affidavits substantial weight, but it should also consider James' lack of supporting affidavits as evidence of the absence of potential class members' support. Def.'s Brief at 31–33. GM states that James' efforts to produce favorable affidavits have resulted in a noticeable lack of success when compared with GM's results. *Id.* at 31 ("James or its attorneys have tried to drum up evidence that dealers support this lawsuit, but have been wholly unsuccessful."). While courts can consider lack of response from purported class members in determining the suitability of certification (*see Liberty Lincoln Mercury, Inc. v. Ford Motor Corp.,* 149 F.R.D. 65 (D.N.J.1993) (class certification denied where only two other class members objected to Ford's uniform national warranty reimbursement formula); *Block v. First Blood Assocs.,* 125 F.R.D. 39 (S.D.N.Y.1989) (court refused to certify class where only 24 of 57 potential class members responded to solicitation requests)), the record is void of any evidence that James made a concerted effort to reach the majority of the proposed class members in an attempt to solicit support.[14]

While there is authority for denying class certification in the face of significant disagreement among the proposed class members, the court is not persuaded on the basis of the affidavits to so rule in this case. *Horton,* 690 F.2d at 485; *see, e.g., East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977); *Peterson v. Oklahoma City Housing Authority,* 545 F.2d 1270, 1273 (10th Cir.1976); *Swain v. Brinegar,* 517 F.2d 766 (7th Cir.1975), *reheard on merits,* 542 F.2d 364 (7th Cir.1976) (en banc). James produced evidence that some putative class members privately support the litigation, but fear retribution if they publicly demonstrate their stand on the issue. James Aff. ¶¶ 4–6, 8–12, 17, Ex. 6 att. Plaintiff's Rebuttal Brief. Although GM produced evidence on the lack of its alleged coercion in discussing this situation with its dealers, the court must take

---

**12.** The Eleventh Circuit warned in *Kleiner* that

[a] unilateral communications scheme ... is rife with potential for coercion. If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.

....

Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable.

*Kleiner,* 751 F.2d at 1202–03.

**13.** The affidavits also bear a substantial similarity to "form" affidavits produced in the Minnesota *Lockwood* litigation. Ex. 5 att. Pl.'s Rebuttal Brief.

**14.** GM directed the court's attention to a single affidavit in support of its claim that James unsuccessfully solicited support. *See* Robertson Aff. ¶ 5, Ex. 69 att. Def.'s Brief. James also admitted to requesting assistance from only six individuals. Pl.'s Rebuttal Brief at 11.

the facts alleged in the light most favorable to the party moving for class certification. Furthermore, GM produced no evidence that the approximately 133 *former* GM dealers who are also included in the proposed class definition oppose the litigation.

In any event, the affidavits fail to demonstrate any preclusive conflict among the putative class members and the named representative. The fact that some class members object to the litigation is insufficient to preclude certification under Rule 23(a)(4). *Horton*, 690 F.2d at 485 (noting that some courts observe unanimity is rarely achieved in large classes and proceed on that basis to certify; citing cases). Furthermore, there is no evidence that this lawsuit will adversely affect any legally cognizable interest of the putative class members. James' challenge solely addresses the legality of the uniform 1% MSRP assessment; the Complaint does not seek to prohibit GM's assistance to dealers in the form of the myriad marketing initiatives. Taking the allegations in James' Complaint as true, the 1% charge is an illegal device used by GM to fund its own advertising. As such, the court may not use as a basis for denial of certification the fact that some dealers may prefer to leave their rights unremedied. *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 692 (D.Minn.1995).

Furthermore, the proper time for a class member to express his disagreement with the lawsuit is after certification. If such a class member genuinely disputes the appropriateness of the suit, the class representative or class counsel, such a member may utilize the opt-out procedure specified under Rule 23(c)(2). *See Race Buick–Pontiac–Cadillac–Oldsmobile–GMC, Inc. v. General Motors Corp.*, C.A. No. 94–25–Erie, slip op. at 10, 1994 WL 868022 (W.D.Pa. Oct. 11, 1994), Ex. B att. Plaintiff's Brief (finding opt-out option adequate to address "differences of opinion" among dealers challenging GM's 1% MSRP assessment);[15] *Lockwood*, 162 F.R.D. at 578–79 (same). The class consists of a finite group of plaintiffs identifiable by name and address[16] such that determining those who wish to opt out should not pose an impossible or even onerous burden.

2. Factual Variances

In addition to the opposition based on its dealer affidavits, GM also contests James' adequacy as the class representative because of its insulated marketing environment and geographic location, the fact that it does not carry the Buick, Cadillac or Chevrolet lines, its business volume or lack thereof, Larry James' negotiations to sell his dealership and Larry James' lack of familiarity with the marketing initiatives. Again, GM's claims fail to demonstrate a preclusive conflict under Rule 23(a)(4).

James has only challenged the mandatory, uniform 1% MSRP assessment applied to all GM dealers. Taking the Complaint as true and assuming that charge is illegal, no GM dealer has a protectable interest in the assessment. This is true whether the dealer sells vehicles in a metropolis or a small town,

---

**15.** *Race* involved a class challenge substantially similar to the case sub judice and to the *Lockwood* Minnesota litigation. GM dealers in Pennsylvania challenged the legality of GM's mandatory 1% MSRP assessment under the ADDCA and the applicable Pennsylvania state statute. The *Race* Court certified the following class:

All persons who were licensed and franchised Buick, Pontiac Cadillac, Oldsmobile, or GMC Truck new vehicle dealers in Pennsylvania at any time from August 1, 1988 through December 31, 1993, excluding defendant, its affiliates, divisions and subsidiaries.

*Race*, C.A. No. 94–25–Erie, slip op. at Order, Ex. B att. Plaintiff's Brief.

In addition to the *Race* and *Lockwood* Courts, a third district court considered class certification of GM dealers opposed to the 1% MSRP assessment, also granted the plaintiff's request, and certified the following class:

[A]ll new Chevrolet dealers, GMC dealers, and Chevrolet/GMC dealers, within the State of Ohio, who have refused or who have involuntarily participated in or contributed to Chevrolet or GMC advertising funds.

*Kasper Buick–GMC Truck, Inc. v. General Motors Corp.*, C. No. C–2–88–944, slip op. at 9 (S.D.Ohio Aug. 2, 1989), Ex. B att. Plaintiff's Brief.

**16.** Indeed, James previously acquired a list of current GM dealers from the Mississippi Motor Vehicle Commission. Ex. A att. Pl.'s Brief. Similarly, identifying former dealers should also be accomplished with relative ease with the records the court assumes GM has kept. *See* Def.'s Brief at 37 (totaling numbers of former Mississippi GM dealers for each division). Publishing the class notice would also ease this burden.

whether the dealer advertises on television or solely by radio, whether the dealer markets all GM lines or only one and whether the dealer sells a thousand new vehicles or a hundred.

As concerns Larry James' alleged negotiations to sell his dealership, the court must inquire into his continued "willingness and ability ... to take an active role in and control the litigation." *Horton*, 690 F.2d at 484; *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1112 (5th Cir.1978) ("The relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation."), *aff'd, Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). Larry James has assured the court that even if he sells his dealership, he will zealously continue the litigation and that he harbors no desire to withdraw as named plaintiff. James Aff., Ex. 6 att. Plaintiff's Rebuttal Brief.[17] Moreover, while James may not have demonstrated a thorough grasp of the mosaic of marketing initiatives, he has shown sufficient understanding of the 1% charge which composes his material claim in this litigation.

Accordingly, the court finds that James has satisfied the prerequisites set out under Rule 23(a). The court now directs its attention to an analysis of 23(b).

## III. FEDERAL RULE OF CIVIL PROCEDURE 23(b)(3)

After satisfying the criteria set out in Rule 23(a), a party seeking class certification must also meet the requirements of Rule 23(b)(1), (2), or (3). James asserts that it satisfies 23(b)(3) which provides that, in order to maintain a class action, a party must demonstrate that common questions of fact or law predominate over individual issues and that a class action is the superior method for maintaining the suit. Fed.R.Civ.P. 23(b)(3). "[I]t is not enough for the plaintiff to state a cause of action on his own behalf against the defendants. The plaintiff must state a claim common to all proposed class members." *Shivangi v. Dean Witter Reynolds, Inc.*, 107 F.R.D. 313, 324 (S.D.Miss.1985).

GM launches its 23(b)(3) attack under the gloss of the merits of this action. Although "a peek into the merits at this stage is very premature," *In re Catfish*, 826 F.Supp. at 1039 n. 22, "[in] order to make the findings required to certify a class action under Rule 23(b)(3), one must initially identify the substantive law issues which will control the outcome of the litigation." *State v. Blue Bird Body Co.*, 573 F.2d 309, 316 (5th Cir. 1978).

James asserts that GM's 1% charge violates both the Automobile Dealers Day in Court Act (ADDCA), 15 U.S.C. §§ 1221 *et seq.*, and the Mississippi Motor Vehicle Commission Law (MMVCL), Miss.Code Ann. §§ 63–17–51 *et seq.* The ADDCA provides in pertinent part:

> An automobile dealer may bring suit against any automobile manufacturer ... and shall recover the damages by him sustained ... by reason of the *failure of said automobile manufacturer ... to act in good faith* in performing or complying with any of the terms or provisions of the franchise ...: *Provided,* That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith.

15 U.S.C. § 1222 (emphasis added). "Good faith" is defined under the Act as:

> the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided,* That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.

15 U.S.C. § 1221(e).

### A. Coercion

 GM sets out the bad faith requirement as the most significant element of the statute in terms of determining class certifi-

---

**17.** The court is also satisfied that James is not maintaining the litigation as a threat for leverage

to drive up the price offered by GM on his dealership.

cation. In interpreting the ADDCA, the general consensus is that the claimant must demonstrate actual coercion or intimidation intended to achieve an improper objective. *See Bob Maxfield, Inc. v. American Motors Corp.,* 637 F.2d 1033, 1038 (5th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981); *Hubbard Chevrolet Co. v. General Motors Corp.,* 682 F.Supp. 873 (S.D.Miss.), *aff'd,* 873 F.2d 873, 876 (5th Cir. 1987). Without such a showing, there can be no recovery under the Act. "Coercion or intimidation must include 'a wrongful demand which will result in sanctions if not complied with.'" *Fray Chevrolet Sales, Inc. v. General Motors Corp.,* 536 F.2d 683, 685 (6th Cir.1976).

 The Mississippi statute also includes a coercion requirement.

(1) It shall be unlawful and constitute a misdemeanor:

\* \* \* \* \* \*

(c) for a manufacturer, a distributor, a wholesaler, a distributor branch or division, a factory branch or division, or a wholesaler branch or division, or officer, agent or other representative thereof, to coerce, or attempt to coerce, any motor vehicle dealer:

\* \* \* \* \* \*

4. To contribute or pay money or anything of value into any cooperative or other advertising program or fund.

Miss.Code Ann. § 63–17–73. GM claims that individual questions of fact predominate over issues common to the class because the coercion element necessarily entails individualized evidentiary determinations. According to GM, each member would be required to testify as to this element. However, coercion may be implied on a class-wide basis when the defendant's challenged conduct constitutes a uniform agreement common to class members. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 450 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Sunrise Toyota, Ltd. v. Toyota Motor Co.,* 55 F.R.D. 519 (S.D.N.Y.1972).

In the case sub judice, James has alleged just such a uniform agreement common to all GM dealers in the form of the 1% assessment. Taking the statements in the Complaint as true, as it must, the court finds these allegations state a claim for coercion which is susceptible of common proof. GM conditioned the sale of one product (new vehicles) on the sale of another (its marketing initiatives). In essence, GM told its dealers: "Either pay for the marketing initiatives, or we will sell you no new vehicles." GM made this statement to all of its dealers, uniformly charging the extra percentage in automaton-like fashion. The coercive element of such leverage is apparent as well as the uniformity with which GM implemented the assessment. *See Bogosian,* 561 F.2d at 450 ("[C]oercion is implicit when plaintiff proves a conditioning of sales of one product upon purchase of another."). Thus, the court finds that common questions of fact and law relating to the legality of the 1% MSRP assessment under the ADDCA predominate over individual issues which may arise.

To the same extent, common questions of fact and law relating to legality under the MMVCL predominate. While the actual language of the statute requires coercion to be demonstrated, such coercion may be shown on a class-wide basis and need not be individually determined, as set out above.

B. Damages

GM's second offensive pertaining to individual issues focuses particularly on the damages requirement of the Mississippi statute which provides:

Any licensee suffering *pecuniary* loss because of any willful failure by any other licensee to comply with any provision of the [MMVCL] or with any rule or regulation promulgated by the commission under authority vested in it by said law may recover reasonable damages and attorney fees therefor in any court of competent jurisdiction.

Miss.Code Ann. § 63–17–101 (emphasis added). GM argues that for each class member to have standing, it must be individually shown that they suffered "pecuniary loss." Def.'s Brief at 49. The court disagrees. While the *amount* of damages suffered may have to be proved on an individual basis, although the court expresses no conclusive

opinion as to this matter at this premature time, the *fact* of injury is common to the class. As set out in the Complaint, each class member sustained initial damages as a result of the 1% MSRP assessment on each new vehicle purchased. Differences in the amount of damages suffered by each class member will not preclude certification when the "fact of injury" is common to all. *In re Catfish*, 826 F.Supp. at 1042. The court finds GM's objections unpersuasive in light of its holding that pecuniary loss in this action is susceptible to common proof.[18]

D. Superiority

The final element under Rule 23(b)(3) requires the party seeking class certification to demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The court is convinced that certification of the proposed class will satisfy this final prong. Class certification will safeguard the judicial economy by limiting duplicative litigation and ensure uniform results for similarly situated parties.

## CONCLUSION

The court is convinced that James has satisfied the prerequisites for class certification under Rule 23 and shall grant its Motion for Class Certification. In doing so, the court notes that it makes no determination as to the merits of this case. The court also retains great discretion over the management of this lawsuit: *In re Catfish*, 826 F.Supp. at 1045. Should class treatment later become inappropriate, the court will not hesitate to take whatever remedial steps are necessary. The class shall be defined as follows:

> All persons who have been Mississippi GM dealers at any time since September 1, 1988 who have paid the GM 1% MSRP assessment when purchasing one or more vehicles from GM excluding defendant, its affiliates, divisions and subsidiaries.

> A separate order in accordance with this opinion shall issue this day.

## ORDER GRANTING MOTION FOR CLASS CERTIFICATION

Pursuant to a memorandum opinion entered this day, the court upon due consideration of Plaintiff's motion for class certification, finds that said motion is well taken and it shall be granted.

It is therefore ORDERED that:

1) Plaintiff Larry James Oldsmobile–Pontiac–GMC Truck Co., Inc.'s Motion for Class Certification be, and it is hereby, GRANTED.

2) the class shall be defined as follows:

> All persons who have been Mississippi GM dealers at any time since September 1, 1988 who have paid the GM 1% MSRP assessment when purchasing one or more

---

**18.** The court is in accord with the *Lockwood* and *Race* Courts which concluded that common issues predominated under Rule 23(b)(3) and certified respective classes of GM dealers who challenged GM's 1% MSRP assessment under the ADDCA and Minnesota and Pennsylvania state law, and the *Kasper* Court which concluded that common issues predominated under Rule 23(b)(2) and certified a class of GM dealers who challenged GM's 1% MSRP assessment under the ADDCA and Ohio state law.

GM asserts in its brief that the only court to take a similar matter to trial to date, the District Court for the Eastern District of Pennsylvania, established as law GM's position that "fact of injury" must be proved on an individual basis. Def.'s Brief at 52–55; *see Videon Chevrolet, Inc. v. General Motors Corp.*, C.A. No. 91–4202, 1994 WL 188931 (E.D.Pa.). While not a class action, the plaintiff in *Videon* challenged GM's Marketing Initiative as violative of Pennsylvania state law. (The court notes that Videon did not assert a violation of the ADDCA as James has and as the plaintiffs did in *Lockwood, Race* and *Kasper*.) The *Videon* court allowed as evidence the impact that the marketing initiative had on Videon's yearly gross profit margins and its sales effectiveness. GM contends that such evidence is necessary to prove fact of injury and can only be proved on an individual basis. However, when Videon later challenged that evidence in its Motion for Judgment As A Matter of Law or in the alternative for a New Trial, the district court pointed out that Videon had not preserved that issue for post-trial review because it failed to timely object at trial when GM offered the evidence. *Videon*, C.A. No. 91–4202, 1994 WL 188931, \*\*6–7 (May 16, 1994 E.D.Pa.), *aff'd*, 46 F.3d 1120 (3d Cir.1994), Ex. 21 att. to Def.'s Brief. Because such proof was not objected to at trial, it cannot be said that any court has established as law the fact that such evidence is necessary for a finding of fact of injury.

vehicles from GM excluding defendant, its affiliates, divisions and subsidiaries.

3) Defendant General Motors Corporation's Motion to Hold Class Certification Motion in Abeyance be, and it is hereby, DENIED AS MOOT.

4) Plaintiff Larry James Oldsmobile–Pontiac–GMC Truck Co., Inc. be, and is hereby, DESIGNATED AS CLASS REPRESENTATIVE.

5) Plaintiff's counsel, Edward A. Moss, Michael B. Hyman, John H. Ward, Paul I. Guest, Steven A. Asher, and James C. Garland, Sr., be, and are hereby, DESIGNATED AS CLASS COUNSEL.

6) class counsel shall cause notice to be mailed by first class mail, postage prepaid, to all members of the class who can be identified through reasonable effort. The notice shall comply in all respects with Federal Rule of Civil Procedure 23(c)(2).

7) class members may exclude themselves from the class by filing with class counsel written notification that they request exclusion from the class by March 18, 1996.

8) class counsel file with the Clerk of the Court by March 29, 1996, an affidavit identifying the persons to whom notice has been mailed and who have not timely requested exclusion.

All memoranda, depositions, affidavits and other matters considered by the court in granting Plaintiff's Motion for Class Certification are hereby incorporated and made a part of the record in this cause.

SO ORDERED.