**PARKS AUTOMOTIVE GROUP, INC., on its behalf and on behalf of all others similarly situated, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**C.A. No. 9:05–1504.**

United States District Court,
D. South Carolina,
Beaufort Division.

March 10, 2006.

Algernon Gibson Solomons, III, Charles Alan Runyan, Speights & Runyan, Hampton, SC, for Plaintiff.

Peter T. Phillips, Stephen G. Morrison, Robert H. Brunson, Nelson Mullins Riley and Scarborough, Charleston, SC, for Defendant.

## ORDER

DUFFY, District Judge.

This matter is before the court on Plaintiff Parks Automotive Group, Inc.'s ("Plaintiff") Motion for Class Certification. For the reasons stated herein, Plaintiff's motion is denied.

## BACKGROUND

In December 2004, a shipment of approximately 2,500 General Motors trucks and SUVs manufactured in Siao, Mexico were exposed to El Norte storms while being transported to Florida. Upon arrival in the port of Jacksonville, General Motors ("GM" or "Defendant") learned that these vehicles were covered in a foreign substance, initially thought to be saltwater, and may have suffered weather-related damage. The delivery of the vehicles to the dealerships that had purchased them was delayed while GM washed and inspected the vehicles for damage. An inspection revealed damage of varying degrees, most predominantly the damage was to the chrome and bright metal and plastic parts of the vehicles.

At this point, Plaintiff claims that GM initiated a series of actions to conceal the extent of the damages from its dealers and the public by making cosmetic repairs and by disposing of the more severely damaged vehicles by auction in Florida. GM representatives created the "$1,000.00 rule" for this shipment of damaged vehicles: all vehicles which received in excess of $1,000.00 worth of repairs were placed for auction at one of the dealer auctions in Florida regardless of the originally intended distribution. Vehicles that received less than $1,000.00 worth of repairs were delivered to the intended dealerships, with the repair invoices in their gloveboxes. Dealerships that had concerns regarding these repaired vehicles could not refuse delivery outright, but were instructed to call either the Dealer Business Center ("DBC"), or their regional contact. (See 2004 GM Service Manual, Plaintiff Exhibit 10 at 5743–44 and Terry Born Affidavit, Defendant Exhibit A at ¶ 12.) It is uncontested that GM did not provide a uniform, total repurchasing program for these vehicles. Dealerships were told that any such repurchasing requests would be directed to the regional level on a case by case basis.

In March of 2005, GM delivered to Plaintiff Parks Chevrolet in Beaufort, South Carolina, three vehicles that had been damaged by the storms and then repaired. The DBC instructed Plaintiff to remove repair invoices from the glove boxes. Plaintiff felt that the DBC wanted the invoices removed in order to conceal the fact that these vehicles had been repaired from customers; but GM contends that GM representatives called each dealer and instructed them that the dealers were responsible for disclosing the damage as required by state law and GM's manual. Plaintiff claims that despite repeated requests, GM refused to provide any compensation for the delayed arrival of the vehicles, or provide dealer credits that were owed. Eventually, Plaintiff informed GM that he did not want the vehicles. GM allegedly "forced acceptance on dealers, including Parks." (Mot. To Certify Class at 3.)

Plaintiff alleges that GM established a common pattern and course of dealing in delivering these damaged vehicles to dealerships. Accordingly, Plaintiff asserts claims on behalf of all dealers who received damaged vehicles from this shipment, requesting (1) an injunction requiring GM to recall and replace or repair all subject damaged vehicles; (2) damages for violation of 15 U.S.C.A. §§ 1222, et seq., requiring that an auto manufacturer act in good faith towards its dealers; (3) damages for violation of the South Carolina Motor Vehicle Unfair Trade Practices Act, S.C.Code Ann. §§ 56–15–10, et seq.; (4) damages for negligence; (5) damages for negligence per se; (6) damages for breach of contract; (7) damages for breach of implied warranties; and (8) contractual and equitable indemnity for all damages caused or enhanced by Defendant's acts. Plaintiff now moves to certify as a class all dealerships who received vehicles from this December 2004 shipment.

### STANDARD

■ Plaintiff carries the burden of establishing each of the requirements for a class action are satisfied. *In re A.H. Robins Co.,* 880 F.2d 709, 728 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989); *Windham v. Am. Brands, Inc.,* 565 F.2d 59, 65 n. 6 (4th Cir.1977) (en banc) ("It is well-settled in this jurisdiction that the proponent of class certification has the burden of establishing the right to such certification under Rule 23."); *Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 362 (4th Cir. 2004) ("The plaintiffs who propose to represent the class bear the burden of demonstrating that the requirements of Rule 23 are satisfied."); *Lienhart v. Dryvit Systems, Inc.,* 255 F.3d 138, 146 (4th Cir.2001) ("The party seeking class certification bears the burden of proof.").

■ At this stage, the class representative need not establish its case on the merits. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Nevertheless, some preliminary inquiry into the merits may be necessary for an intelligent determination of whether to certify the class. *See Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1312–13 (4th Cir.1978). Questions regarding the certification of a class action are left to the sound discretion of the district court and any such decision by the court will only be reversed upon a showing of abuse of that discretion. *Stott v. Haworth,* 916 F.2d 134 (4th Cir.1990).

### ANALYSIS

To be certified, a proposed class must satisfy Rule 23(a) and one of the three sub-parts of Rule 23(b). *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 423 (4th Cir.2003). Rule 23(a) states that an action may be maintained as a class action if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

representative party will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

■ Defendant's most vigorously asserted argument against certifying this action as a class action is that the requisite "common questions of law or fact" are not present. A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees. *See* 7A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1763 (3d ed.2005). A question is not common, by contrast, if its resolution "turns on a consideration of the individual circumstances of each class member." *See id.* The commonality test is qualitative, not quantitative. 1 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions,* § 3.10 at 3–50 (3d ed.1992). There need be only a single question of law or fact common to all members of the class. *Id.* However, the existence of any common question is insufficient because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998) (en banc). "What [the court looks] for is a common issue the resolution of which will advance the litigation." *Id.*

Plaintiff contends that Defendant engaged in a pattern of conduct that affected all putative class members and gives rise to the asserted causes of action. Specifically, Plaintiff claims that the class members all entered into Dealer Agreements with Defendant, and that Defendant breached these Agreements and acted in bad faith when it delivered the subject vehicles late and in a damaged condition. Further, Plaintiff alleges that Defendant failed to adequately inform the class members regarding the damage to the vehicles, failed to adequately compensate the class members for delivering nonconforming goods, and acted in bad faith by instructing class members to conceal known damage from customers. This pattern of conduct, Plaintiff claims, is sufficient to satisfy Rule 23's requirement for commonality of law and fact as between class members.

On the other hand, Defendant argues that determining whether GM acted unreasonably or breached any duties in its dealings with Plaintiff regarding the subject vehicles will not establish the same for the remaining dealerships. Instead, an individualized inquiry regarding the circumstances of each vehicle's delivery and each dealer's acceptance or rejection of it is required to establish whether Defendant violated any statutory duties or failed to act in good faith, whether Defendant's actions were reasonable or constituted negligence, and whether Defendant breached any contract or implied warranties. In addition, Defendant contends that class certification is improper when a defendant asserts legal defenses that may depend on facts peculiar to each class member's case. *Belle,* 2006 WL 335892, *7 (holding that certification was properly denied where individual plaintiff's claims were subject to various statute of limitation defenses depending on when each plaintiff learned of the alleged fraud). For example, because some class members accepted and subsequently sold the subject vehicles, Defendant asserts the defense of accord and satisfaction as against these plaintiffs. Defendant also asserts the affirmative defenses of release, waiver, and comparative negligence. As such, GM claims defenses would require individualized inquiry for each class member.

The court agrees with Defendant GM. The Fourth Circuit cases of *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331 (4th Cir.1998), and *Gunnells v. Healthplan Services, Inc.,* 348 F.3d 417 (4th Cir. 2003), and *Belle v. Jefferson–Pilot Life Ins. Co.,* 2006 WL 335892, *16 (4th Cir.2006), all hold that where individual affirmative defenses may be asserted against one plaintiff, but not the entire class, class certification is precluded. The Fourth Circuit has flatly held that "when the defendants' affirmative defenses ... may depend on facts peculiar to each plaintiff's case, class certification is erroneous." *Broussard,* 155 F.3d at 342. In this case, Plaintiff has failed to show that affirmative defenses asserted by Defendant may be resolved on their merits on a class

wide-basis. *Belle v. Jefferson–Pilot Life Ins. Co.,* 2006 WL 335892, *7 (4th Cir.2006) ("It is not enough, therefore, for Appellants to argue that Jefferson–Pilot failed to show that its statute of limitations defense presents individual issues. Instead, the record must affirmatively reveal that resolution of the statute of limitations defense on its merits may be accomplished on a class-wide basis.") Although it is difficult to determine with any precision, the court finds that GM's affirmative defenses are not without merit and would require individualized inquiry in at least some cases. Accordingly, the court finds that class certification would be erroneous.

Further, even assuming affirmative defenses are not appropriate, the common issues of fact and law are not so predominant as to support a class certification. The bare fact that the vehicles were damaged in the journey from Mexico to Florida is no evidence of any fault on the part of Defendant. Plaintiff's claims—that GM did not act in a timely or reasonable manner regarding the shipment of the vehicles, that GM's placement of the vehicles was not reasonable, that GM violated the federal dealer franchise act, and that GM violated express and implied covenants of good faith and fair dealing—depend upon an analysis of the actions GM took after discovering the damage to the vehicles. The resolution of these issues requires analysis of the individual communications and course of dealing between dealership employees and agents of GM. Because GM zone managers had the discretion to address any dealer issues regarding these vehicles, it cannot be supposed that Plaintiff's experience was typical or common to the experience of other dealerships.

Also, in determining whether GM acted unreasonably or in bad faith in delivering the repaired vehicles to the dealerships, the court would have to make an individualized inquiry into the extent to which each delivered vehicle was damaged.[1] The mere fact that GM delivered to dealerships vehicles that were damaged in transit and subsequently repaired is not, in itself, evidence of bad faith, breach of contract, or unfair busi-

---

1. Plaintiff agrees that vehicles from this shipment suffered various degrees of damage.

ness practices.[2] Certainly, GM may have acted reasonably in delivering a vehicle that suffered only minimal, cosmetic damage, where it may have acted *unreasonably* in delivering a vehicle with a more significant amount of damage. Given the need for individual inquiry into these issues, the court must hold that this case does not meet the commonality and predominance requirements of Rule 23.

Further, as Defendant rightly notes, to recover under the federal dealer franchise act, 15 U.S.C. § 1222, Plaintiff must make a showing that GM actually coerced the dealerships. Proof of coercion requires a showing of "a wrongful demand that would result in penalties or sanctions if not complied with;" the coercion "must be actual, the mere fact that a dealer may have felt it had been coerced ... is not sufficient." *Wallace Motor Sales, Inc. v. American Motors Sales Corporation,* 780 F.2d 1049, 1056 (1st Cir.1985). In *Larry James Oldsmobile v. General Motors Corp.,* 164 F.R.D. 428 (N.D.Miss.1996) and *Lockwood v. General Motors Corp.,* 162 F.R.D. 569 (D.Minn.1995), upon which Plaintiff relies in his memorandum, the court held that a uniformly applied, mandatory advertising program may be evidence of actual coercion of a class. *Larry James Oldsmobile,* 164 F.R.D. at 439 ("[C]oercion may be implied on a class-wide basis when the defendant's challenged conduct constitutes a uniform agreement common to class members"); *Lockwood,* 162 F.R.D. at 580 (finding that coercion may be implied class-wide "when evidenced by a uniform agreement common to the class" and, in this case, the assessment was mandatory and uniformly applied). In this case, however, Plaintiff has failed to present sufficient evidence of a mandatory, uniformly applied policy or agreement between GM and all dealerships regarding the acceptance of

these vehicles.[3] As such, to determine whether the individual dealerships were coerced into accepting the vehicles, the court would have to perform an individualized inquiry into the communications between GM and each purported plaintiff. *See Gunnells,* 348 F.3d at 435 (holding, in class action based on fraud, that "the reliance element of fraud and negligent misrepresentation claims [is] not readily susceptible to class-wide proof; rather, proof of reasonable reliance ... depends upon a fact-intensive inquiry into what information each [plaintiff] actually had" (internal quotation marks omitted)); *Zimmerman v. Bell,* 800 F.2d 386, 390 (4th Cir.1986) (denying class certification on fraud claims where "the extent of knowledge of the omitted factors or reliance on misrepresented fact will vary from shareholder to shareholder").

The breach of contract causes of action in this case also present individual issues that cannot be resolved on a class wide basis. Plaintiff Parks may bring suit to interpret its own Dealer Agreement, but it cannot sue on behalf of a class of dealerships whose contracts may well involve the law of several different states. *Coca–Cola Bottling Co. of Elizabethtown, Inc. v. Coca–Cola Co.,* 95 F.R.D. 168, 178 (D.C.Del.1982) ("Plaintiff could cite no case, nor could the Court find one, certifying a class action based on a contract claim brought in diversity which would require the application of more than one state."). Even assuming that all the Dealership Agreements are identical in their material parts, a myriad of contract issues lurk in this lawsuit, and the existence of different state rules applying to some dealerships and not others would render adjudication on a class basis virtually impossible. *Id.* As such, the court finds that these causes of action are also inappropriate for class certification.

---

**2.** This situation is entirely unlike class actions against manufacturers of defective drugs, in which, regardless of the amount of injury sustained by individual class members, the dangerous defect makes the defendant drug manufacturer liable.

**3.** Plaintiff claims that GM's policy of requiring dealers to accept vehicles whose repairs totaled less than $1,000.00 is a sufficiently uniform poli-

cy to constitute class-wide coercion; however, it is uncontested that dealers were instructed to contact regional DBCs with any concerns regarding the delivered vehicles. These DBCs thereafter dealt on an individual basis with the complaining dealers. Such a policy cannot be considered sufficiently "uniform" and "mandatory" to justify a reliance on a common course of conduct to prove actual coercion.

In light of the foregoing, the court holds that Plaintiff has failed to demonstrate that there are common issues of law or fact present in this suit that would make it appropriate for class certification. There are simply too many individual contract and course of dealing issues to be considered. The court recognizes that there is a certain nucleus of facts surrounding the Dealership Agreements, the delay in delivery, and GM's application of the $1,000.00 rule which might be common to the class, but believes that these facts would be submerged by the facts surrounding the course of dealing under each individual contract, the application of different states' laws to each set of facts, and the individual affirmative defenses Defendant may assert against some, but not all, putative class members. The court therefore declines to certify the class.[4]

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiff's Motion for Class Certification is hereby **DENIED.**

**AND IT IS SO ORDERED.**

---

4. In addition to failing to meet the commonality requirement of Rule 23(a), the court notes that Plaintiff also fails to satisfy any one of the three subsections of Rule 23(b). Plaintiff claims to satisfy both subsections (2) and (3); however, the court finds that neither of these subsections are satisfied.

Rule 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." FRCP Rule 23(b)(2). The Fourth Circuit has held that Rule 23(b)(2) does not "cover cases where the primary claim is for damages, but is only applicable where the relief sought is predominantly injunctive or declaratory." *Belle,* 2006 WL 335892, \*12; *see also Zimmerman,* 800 F.2d at 389–90 (holding that Rule 23(b)(2) does not apply where the proposed class seeks "essentially monetary relief," but is "limited to claims where the relief sought was primarily injunctive or declaratory").

In this case, Plaintiff's primary claims are for money damages, not injunctive relief; therefore, class certification under Rule 23(b)(2) would be

inappropriate. Although Plaintiff does ask for an injunction, Plaintiff's complaint is plainly claiming primarily monetary relief, as Plaintiff requests for itself and the proposed class actual damages, including consequential damages, double damages under the South Carolina Unfair Trade Practice Act, and punitive damages.

Rule 23(b)(3) is satisfied if the issue common to all class members is both "predominant" and "superior." The predominance requirement is similar to but "more stringent" than the commonality requirement of Rule 23(a). *Lienhart,* 255 F.3d at 146 n. 4. The Fourth Circuit has held that "[i]n a class action brought under Rule 23(b)(3), the 'commonality' requirement [of Rule 23(a)(2)] is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." *Lienhart,* 255 F.3d at 147 n. 4 (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 609, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Accordingly, the court's finding that no commonality exists under Rule 23(a)(2) precludes a finding that the requirements of Rule 23(b)(3) have been satisfied.