**CORRECTED OPINION**

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

Rose Belle Thorn; Rosa M. Thorn,
Individually and as Personal
Representatives of the Estate of
Leroy Thorn, Deceased; Robert
Pugh; Evelyn D. Pugh, on behalf of
themselves and on behalf of all
others similarly situated,
                *Plaintiffs-Appellants,*

            v.                                      No. 05-1162

Jefferson-Pilot Life Insurance
Company, as successor of Pilot Life
Insurance Company,
                *Defendant-Appellee.*

─────────────

American Council of Life Insurers,
    *Amicus Supporting Appellee.*

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Cameron McGowan Currie, District Judge.
(CA-00-2782)

Argued: September 19, 2005

Decided: February 15, 2006

Corrected Opinion Filed: March 9, 2006

Before WILLIAMS and MICHAEL, Circuit Judges, and
James C. DEVER III, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

Affirmed and remanded by published opinion. Judge Williams wrote the majority opinion, in which Judge Dever concurred. Judge Michael wrote a separate dissenting opinion.

## COUNSEL

**ARGUED:** Sanford Svetcov, LERACH, COUGHLIN, STOIA, GELLER, RUDMAN & ROBBINS, L.L.P., San Francisco, California, for Appellants. James F. Jorden, JORDEN BURT, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Andrew S. Friedman, Wendy J. Harrison, BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C., Phoenix, Arizona; William M. Audet, Michael McShane, ALEXANDER, HAWES & AUDET, L.L.P., San Francisco, California; W. Christian Hoyer, Christa L. Collins, JAMES, HOYER, NEWCOMER & SMILJANICH, P.A., Tampa, Florida; John J. Stoia, Jr., Alreen Haeggquist, LERACH, COUGHLIN, STOIA, GELLER, RUDMAN & ROBBINS, L.L.P., San Francisco, California; Charles Mathis, MATHIS, ADAMS & TATE, P.C., Atlanta, Georgia; Barry A. Weprin, Brad N. Friedman, MILBERG, WEISS, BERSHAD & SCHULMAN, L.L.P., New York, New York; Christopher A. Seeger, David R. Buchanan, SEEGER, WEISS, L.L.P., New York, New York; Herman Watson, Jr., Rebekah Keith McKinney, WATSON, JIMMERSON, GIVHAN, MARTIN & MCKINNEY, P.C., Huntsville, Alabama; T. English McCutchen, William E. Hopkins, Jr., MCCUTCHEN, BLANTON, JOHNSON & BARNETTE, L.L.P., Columbia, South Carolina; Ronald R. Parry, David Futscher, PARRY, DEERING, FUTSCHER & SPARKS, P.S.C., Covington, Kentucky; J. P. Strom, Jr., Mario A. Pacella, STROM & YOUNG, L.L.C., Columbia, South Carolina; Joe R. Whatley, WHATLEY, DRAKE, L.L.C., Birmingham, Alabama, for Appellants. Brent O. E. Clinkscale, Jacquelyn D. Austin, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Greenville, South Carolina; Debbie W. Harden, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Charlotte, North Carolina; Waldemar J. Pflepsen, Jr., Stephen H. Goldberg, JORDEN BURT, L.L.P., Washington, D.C., for Appellee. Victoria E. Fimea, AMERICAN COUNCIL OF LIFE INSURERS, Washington, D.C.; Evan M. Tager, Craig W. Canetti, MAYER, BROWN, ROWE & MAW, L.L.P., Washington, D.C., for Amicus Supporting Appellee.

**OPINION**

WILLIAMS, Circuit Judge:

The named plaintiffs (Appellants) in this case filed an individual and class-action complaint against Jefferson-Pilot Life Insurance Company on behalf of themselves and approximately 1.4 million African-American policyholders. The complaint alleged that Jefferson-Pilot's corporate predecessors discriminated against the class members in violation of federal law by charging them higher premiums than whites for similar insurance policies. The district court denied certification under Fed. R. Civ. P. 23(b)(3), finding that because it could not resolve Jefferson-Pilot's statute of limitations defense on a class-wide basis, issues common to the class did not predominate over individual ones. The district court also denied certification under Fed. R. Civ. P. 23(b)(2), finding that Appellants' requested remedy was merely a predicate for monetary damages. Appellants moved for an immediate interlocutory appeal under Fed. R. Civ. P. 23(f) and 28 § U.S.C.A. 1292(e) (West Supp. 2005), which we accepted under Fed. R. App. P. 5.

We hold that Appellants bear the burden of proving compliance with Rule 23 and that the district court did not clearly err in finding that Jefferson-Pilot's statute of limitations defense did not present common issues that could be resolved on a class-wide basis. We also hold that the district court correctly held certification was improper under Rule 23(b)(2) because Appellants' requested relief was not predominantly injunctive or declaratory in nature. We therefore affirm and remand for further proceedings on Appellants' individual claims.

I.

The parties agree on most of the facts relevant to this appeal. From 1911 to 1973, Jefferson-Pilot Insurance Company's corporate predecessors (collectively Jefferson-Pilot) issued approximately 1.4 million industrial life insurance policies[1] to African-Americans in North

---

[1]Industrial life insurance policies are low premium/low benefit insurance policies, some with premiums as low as $0.05 weekly and benefits as little as several hundred dollars. The benefits from these policies are often used to cover funeral and burial expenses.

Carolina, South Carolina, Georgia, and Virginia. Jefferson-Pilot admits that it charged African-American policyholders higher premiums than it charged white policyholders for policies with similar benefits. Jefferson-Pilot contends, however, that its "dual-rate"[2] policies were not the product of racial animus. Instead, it argues that the price difference was nothing more than a wise business decision based on mortality tables showing that African-Americans had shorter life expectancies and were thus higher life-insurance risks than similarly situated whites.[3]

Jefferson-Pilot stopped issuing industrial life insurance policies altogether in 1973, but continued to collect premiums on the dual-rate policies that were still in effect at that time. In 1988, Jefferson-Pilot adjusted the race-based premiums on all active policies according to blended mortality tables, which were not based on race. Even after this adjustment, however, African-American policyholders still paid more than whites for similar benefits because whites' premiums had been determined according to mortality tables for whites only. In 2000, about the time the instant action was filed,[4] Jefferson-Pilot declared that all still-active industrial insurance policies, whether owned by African-Americans or whites, were "paid up"; *i.e.*, that no further premiums would be charged on the policies. At that time, only approximately 45,000 of the 1.4 million dual-rate policies issued to African-Americans were still in effect.[5]

---

[2]The term "dual-rate" refers to the practice identified in the text; *i.e.*, the practice of charging African-Americans higher premiums than whites for similar benefits. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 412 (5th Cir. 2004), *cert. denied sub nom. Am. Nat'l Ins. Co. v. Bratcher*, 125 S.Ct. 277 (2004). A "dual-plan" practice, by contrast, describes an insurance company's practice of offering African-Americans only those policies with lower benefits than whites. *See id*. In addition to their dual-rate allegations, Appellants also alleged that Jefferson-Pilot engaged in dual-plan practices. Because, however, they did not seek certification on that issue, the dual-plan allegations are not relevant to this appeal.

[3]We express no opinion on the merits of Jefferson-Pilot's argument.

[4]It is unclear from the record whether Jefferson-Pilot's declaration occurred before or after this suit was filed. This factual ambiguity is immaterial to our resolution of this case.

[5]It is undisputed that the remainder of the policies had either matured due to the death of the policyholder or had been terminated for any number of reasons, such as non-payment.

In September 2000, Appellants Rose Belle Thorn, Rosa M. Thorn, Robert Pugh, and Evelyn D. Pugh — four African-Americans insured under a Jefferson-Pilot industrial life insurance policy — filed a class-action complaint against Jefferson-Pilot alleging that its dual-rate policies violated 42 U.S.C.A. §§ 1981 (West 2003) (granting equal rights to "make and enforce contracts" without regard to race) and 1982 (West 2003) (granting equal rights to "inherit, purchase, lease, sell, hold, and convey real and personal property" without regard to race).[6] The complaint also alleged that Jefferson-Pilot took steps to conceal these practices from its policyholders, such as instructing its agents not to disclose the race-based premium disparities. The complaint sought, inter alia, an injunction prohibiting Jefferson-Pilot from collecting any future premiums on its dual-rate policies, restitution for the difference in premium payments made by African-American and white policyholders, punitive damages, and attorney's fees. In its answer, Jefferson-Pilot, inter alia, denied that it took steps to conceal its dual-rate practices, denied that Appellants were entitled to relief, and raised a statute of limitations defense.

In October 2003, Appellants moved under Fed. R. Civ. P. 23(b)(3) and 23(b)(2) to certify a class of "all African-Americans who [were insured by a race-based dual-rate] industrial life insurance policy that was issued [by Jefferson-Pilot]." (J.A. at 284.)[7] Jefferson-Pilot opposed the motion. It argued, in pertinent part, that certification was improper under Rule 23(b)(3) because individual members of the class could have been exposed to sufficient information to give them either actual or constructive knowledge of its dual-rate practices outside of the limitations period. In Jefferson-Pilot's view, this fact required the district court to conduct individual hearings for each

---

[6]In addition, the complaint alleged that Jefferson-Pilot's dual-rate policies violated state tort law. Because Appellants did not seek certification on this claim, we do not consider it.

[7]Appellants actually sought certification of a class of African-Americans with an "ownership interest" in the dual-rate policies. (J.A. at 284.) The district court was concerned that this term could create conflicts by pitting two class members against one another for the same funds, and narrowed the class request to include only those "insured" under a dual-rate policy. (J.A. at 284.) Appellants do not appeal this decision.

class member to determine when he or she learned of the dual-rate practices, a requirement that defeated the benefits of class certification. In support of this argument, Jefferson-Pilot submitted an expert report from Henry M. McKiven, a professor in the History Department at the University of South Alabama. In the report, Dr. McKiven detailed the news media's reports of race-based insurance practices over the course of the twentieth century, noted the objections to the practices raised in the African-American community, particularly by African-American church leaders, through the middle part of the century, and explained that a number of African-Americans formed their own insurance companies early in the century in an effort to offer an alternative to white-owned insurance companies' race-based practices. Dr. McKiven claimed that "based on these numerous sources of information, . . . an African American living in the Southeast could have become aware" of insurance companies' dual-rate practices. (J.A. at 101.) Jefferson-Pilot also argued that certification was improper under Rule 23(b)(2) because Appellants sought primarily monetary relief.

Appellants argued that the district court could resolve Jefferson-Pilot's statute of limitations defense on a class-wide basis — *i.e.*, without conducting individual hearings — because Jefferson-Pilot had not shown that any class member had actual knowledge of its dual-rate practices and because all of the class members would have been exposed to the same information that could have given them actual or constructive knowledge of the practices. In support of this argument, Appellants submitted an expert report from Robert J. Norrell, a professor in the history department at the University of Tennessee. Dr. Norrell claimed that although there had been some media reporting of the issue during the twentieth century, "the public, or the average citizen of the United States, including African-Americans, was not generally aware of [these] practices." (J.A. at 70.) Appellants also argued that certification was proper under Rule 23(b)(2) despite the fact they sought monetary relief, because the relief they sought was equitable, not legal, in nature.

In May 2004, the district court conducted an extensive hearing, most of which was devoted to whether the class should be certified. (J.A. at 126-275.) In December 2004, the district court denied the motion to certify by a thorough, well-written opinion. The district

court noted that "[t]he claims at issue in this action relate to policies issued as early as 1911 and, at the latest, in 1973. The initial (and possibly only) actionable discrimination would, therefore, have occurred no later than the date of issuance of the policy, in other words, from twenty-seven to eighty-nine years before suit was instituted. This very significant period of time raised critical questions as to when the claim accrued." (J.A. at 296 (footnote and internal quotation marks omitted).) Focusing on this critical question, the district court found that the record was devoid of evidence that resolution of the issue could occur on a class-wide basis. (J.A. at 296, 298 ("[Jefferson-Pilot] has presented a strong prediction of evidence that there were numerous sources available during the relevant period which could have alerted class members to the fact that the practices now complained of were common in the industry, if not uniform among White-owned companies. . . . In light of the information which [Jefferson-Pilot] has shown was available, the court cannot assume that none of the members of the proposed class gained sufficient information to put them on inquiry notice at some point which would result in their claim being time barred.").) The district court held that this fact meant that Jefferson-Pilot was entitled to present evidence as to individual class members' actual or constructive knowledge, thereby rendering the class members' claims uncommon from one another and precluding certification under Rule 23(a). (J.A. at 298-300.) In the alternative, the district court held that certification was improper under Rule 23(b)(3) because individual hearings on the statute of limitations and the issue of damages were required, management of the class would be difficult due to the need for such individual hearings, and the class device was not superior to individual litigation. The district court also held, again in the alternative to the Rule 23(a) holding, that certification was improper under Rule 23(b)(2) because Appellants' requested injunctive and equitable relief was merely a predicate for money damages.

## II.

On appeal, Appellants argue that the district court misapplied Rule 23(a), 23(b)(3) and 23(b)(2) in denying their motion to certify. "A district court has broad discretion in deciding whether to certify a class." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (internal quotation marks omitted). "[P]laintiffs bear the burden . . . of

demonstrating satisfaction of the Rule 23 requirements and the district court is required to make findings on whether the plaintiffs carried their burden . . . ." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004). A district court per se abuses its discretion when it makes an error of law or clearly errs in its factual findings. *See Lienhart*, 255 F.3d at 146 (noting that the district court's discretion "must be exercised within the framework of Rule 23"(internal quotation marks omitted)); *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 598 n.16 (4th Cir. 1976) (noting that "where there is clear error," appellate court should upset the district court's exercise of its discretion on a motion for certification).

We first address Appellants' Rule 23(b)(3) arguments.

### III.

Appellants argue that the district court abused its discretion in denying the certification motion under Rule 23(b)(3) because Jefferson-Pilot failed to satisfy its burden of showing that its statute of limitations defense presented individual issues that could not be resolved on a class-wide basis. They argue in the alternative that even if they have the burden of proving that Jefferson-Pilot's statute of limitations defense presents common issues that can be resolved on a class-wide basis, they have satisfied that burden. Jefferson-Pilot argues that Appellants bear the burden of proving that its statute of limitations defense presents common issues and that the district court did not clearly err in finding that Appellants failed to satisfy this burden. Before addressing these arguments, we pause to set forth the legal landscape in which they arise.

### A.

The class-action device, which allows a representative party to prosecute his own claims and the claims of those who present similar issues, is an exception to the general rule that a party in federal court may vindicate only his own interests. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). Chief among the justifications for this device is its efficiency: adjudication of a properly-constituted class action generally has res judicata effect and "saves the resources of both the courts and the parties by permitting an issue potentially

affecting every [class member] to be litigated in an economical fashion." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). To ensure this benefit is realized, however, and to protect both the rights of the absent plaintiffs to present claims that are different from those common to the class and the right of the defendant to present facts or raise defenses that are particular to individual class members, district courts must conduct a "rigorous analysis" to ensure compliance with Rule 23, *Falcon*, 457 U.S. at 161, paying "careful attention to the requirements of [that] Rule." *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977).[8]

To be certified, a proposed class must satisfy Rule 23(a) and one of the three sub-parts of Rule 23(b). *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). The requirements of Rule 23(a) are familiar: numerosity of parties, commonality of factual or legal issues, typicality of claims and defenses of class representatives, and adequacy of representation. *Id*. For purposes of this appeal, the most salient of these requirements is commonality. "Commonality requires that there are questions of law or fact common to the class." *Lienhart*, 255 F.3d at 146 (internal quotation marks omitted). A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees. *See* 7A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1763 (3d ed. 2005). A question is not common, by contrast, if its resolution "turns on a consideration of the individual circumstances of each class member." *See id*.

---

[8]In *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003), we held that courts should give Rule 23 a "liberal rather than restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *Id.* (internal quotation marks omitted). To the extent the vision of liberality and flexibility set forth by the court in *Gunnells* conflicts with the Supreme Court's admonitions that we should pay "careful attention" to Rule 23 by giving it a "rigorous analysis," we are, of course, bound to follow the Supreme Court.

The district court found that Appellants' proposed class did not satisfy Rule 23(a). Because we base our decision on the district court's alternative holdings that certification was improper under Rules 23(b)(3) and 23(b)(2), we assume, without deciding, that Appellants satisfied Rule 23(a), and turn our attention to Rule 23(b)(3).[9]

Rule 23(b)(3) has two components: predominance and superiority. The predominance requirement is similar to but "more stringent" than the commonality requirement of Rule 23(a). *Lienhart*, 255 F.3d at 146 n.4. Whereas commonality requires little more than the presence of common questions of law and fact, *see id.* at 146, Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Gariety*, 368 F.3d at 362 (internal quotation marks omitted). The superiority requirement ensures that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Among the factors a district court should consider in deciding whether a class action meets these two requirements are

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

At the class certification phase, the district court must take a "close look" at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification. *Gariety*, 368 F.3d at 365 (internal quotations omitted). Such findings can be

---

[9]Appellants did not invoke Rule 23(b)(1).

necessary even if the issues tend to overlap into the merits of the underlying case. *Falcon*, 457 U.S. at 160 ("[S]ometimes it may be necessary for the [district] court to probe behind the pleadings before coming to rest on the certification question."); *Gariety*, 368 F.3d at 366 ("[W]hile an evaluation of the merits . . . is not part of a Rule 23 analysis, the factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits."). The likelihood of the plaintiffs' success on the merits, however, is not relevant to the issue of whether certification is proper. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *Gariety*, 368 F.3d 366.

Here, the district court found that Jefferson-Pilot's statute of limitations defense presented individual issues that could not be resolved on a class-wide basis, a fact that contributed to its conclusion that common issues did not predominate under Rule 23(b)(3). (J.A. at 292, 294-300.) We therefore turn our attention to the statute of limitations defense.

While Congress has not enacted a specific statute of limitations for §§ 1981 and 1982, we interpret these federal statutes to "borrow" the statute of limitations and equitable tolling rules applicable to the state cause of action that is most analogous to §§ 1981 and 1982. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987) ("Because § 1981, like [§ 1982 and 42 U.S.C. § 1983], does not contain a statute of limitations, federal courts should select the most appropriate or analogous state statute of limitations."); *Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999) (holding that under a borrowed statute of limitations state rules of equitable tolling apply). The parties do not brief the various state causes of action from which we should borrow the federal statute of limitations, but the district court concluded, and the parties do not contest, that the statutes of limitations for the §§ 1981 and 1982 claims range from 2 to 6 years. For purposes of this appeal, we assume the district court's conclusion is correct.

Whether state or federal law supplies the length of the limitations period, federal law determines when the clock begins to run against that period, or, phrased technically, when the cause of action "accrues." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). We have held that a cause of action accrues

under a borrowed statute of limitations "either when the plaintiff has [actual] knowledge of his claim or when he [has constructive knowledge of his claim]—*e.g.*, by the knowledge of the fact of injury and who caused it—to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." *Id.*; *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996).[10]

Our circuit's accrual rule, which focuses on the contents of the plaintiff's mind, is not readily susceptible to class-wide determination. Examination of whether a particular plaintiff possessed sufficient information such that he knew or should have known about his cause of action will generally require individual examination of testimony from each particular plaintiff to determine what he knew and when he knew it. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) (noting, in holding that a state statute of limitations defense presented individual issues, that "[w]hether and when each [plaintiff] received, read, and understood [the information that could have alerted them to the existence of a cause of action] is crucial to whether their . . . claim against [the defendant] is time-barred by [the] statute of limitations"). Indeed, in cases where the legal issue is similarly focused on the plaintiff's knowledge, such as the requirement that a plaintiff in a fraud claim reasonably rely on the

---

[10]In 1990, Congress enacted a residual statute of limitations applicable to all federal causes of action created after the date of its enactment. 28 U.S.C.A. § 1658 (West Supp. 2005). This statute provides a four-year window in which a plaintiff can bring suit "after the cause of action accrues." It does not, however, define the word "accrue[ ]." *Id.*

While § 1981 was enacted well before 1990, Congress amended § 1981 in 1991 to provide additional protections in the right to "make and enforce contracts." *See* 42 U.S.C.A. § 1981(b). The Supreme Court has held that a cause of action that relies on these additional rights is subject to the four-year statute of limitations found in § 1658. *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382 (2004).

For purposes of this appeal, we need not consider whether Appellants' claims rely on the 1991 amendments to § 1981, thus triggering § 1658 instead of borrowed state law, because neither party disputes that accrual occurs when the class members knew or should have known of Jefferson-Pilot's dual-rate practices, regardless of whether the limitations period is determined by § 1658 or state law.

defendant's representations, we have consistently held that individual hearings are required. *See Gunnells*, 348 F.3d at 435 (holding, in class action based on fraud, that "the reliance element of fraud and negligent misrepresentation claims [is] not readily susceptible to class-wide proof; rather, proof of reasonable reliance . . . depends upon a fact-intensive inquiry into what information each [plaintiff] actually had" (internal quotation marks omitted)); *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (denying class certification on fraud claims where "the extent of knowledge of the omitted factors or reliance on misrepresented fact will vary from shareholder to shareholder").

## B.

### 1.

With this background in mind, we return to Appellants' arguments. Appellants first argue that Dr. McKiven's expert report failed to satisfy Jefferson-Pilot's burden of proving that its statute of limitations defense presents issues that must be decided on an individual basis. This argument, of course, assumes that Jefferson-Pilot bears such a burden. Our cases prove this assumption false; we have stressed in case after case that it is *not the defendant* who bears the burden of showing that the proposed class *does not comply* with Rule 23, but that it *is the plaintiff* who bears the burden of showing that the class *does comply* with Rule 23. *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 65 n.6 (4th Cir. 1977) (en banc) ("It is well-settled in this jurisdiction that the proponent of class certification has the burden of establishing the right to such certification under Rule 23."); *Lienhart*, 255 F.3d at 146 ("The party seeking class certification bears the burden of proof."); *Gariety*, 368 F.3d at 362 ("The plaintiffs who propose to represent the class bear the burden of demonstrating that the requirements of Rule 23 are satisfied."). It is not enough, therefore, for Appellants to argue that Jefferson-Pilot failed to show that its statute of limitations defense presents individual issues. Instead, the record must affirmatively reveal that resolution of the statute of limitations defense on its merits may be accomplished on a class-wide basis.

Seeking to avoid this conclusion, Appellants argue that because Jefferson-Pilot bears the burden of proving the merits of its statute of

limitations defense, it should also bear the burden of demonstrating that resolution of that defense cannot occur on a class-wide basis. Even assuming that Jefferson-Pilot has the burden of proving its statute of limitations defense on the merits,[11] we reject this argument. Our cases permit no exception to the rule that the plaintiff bears the burden of showing compliance with Rule 23. *See Gunnells*, 348 F.3d at 438 (failing to carve out exception to the rule that the plaintiff must show compliance with Rule 23 even though one of the individual issues that defeated certification was a statute of limitations defense); *Broussard*, 155 F.3d at 342 (same). Moreover, the standard justifications for allocating the burden of proving an affirmative defense to the defendant — efficiency and fairness — disappear when the thing to be proved is no longer the merit of the defense but compliance with Rule 23. *See Campbell v. United States*, 365 U.S. 85, 96 (1961) ("[T]he ordinary rule, based on considerations of fairness, does not

---

[11]It is by no means settled that Jefferson-Pilot bears the burden of proving its statute of limitations defense. Indeed, several of our sister circuits have held that when the plaintiff's injury occurs outside of the limitations period, the plaintiff bears the burden of showing that he first knew or should have known about his cause of action within the limitations period. *See O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002) (interpreting the Comprehensive Environmental Response, Compensation, and Liability Act); *Cathedral of Joy Baptist Church v. Vill. of Hazel Crest*, 22 F.3d 713, 717 (7th Cir. 1994) (interpreting 42 U.S.C. § 1983); *Adkins v. Int'l Union of Elec. Workers*, 769 F.2d 330, 335 (6th Cir. 1985) (interpreting National Labor Relations Act). This rule, however, is not unanimous. *See Hughes v. United States*, 263 F.3d 272, 278 (3d Cir. 2001) (holding that the statute of limitations under the Federal Tort Claims Act [FTCA] "is an affirmative defense which the defendant has the burden of establishing." (internal quotation marks omitted)); *Schmidt v. United States*, 933 F.2d 639, 640 (8th Cir. 1991) (same). We have never decided the issue, although we have held that an FTCA plaintiff bears the burden of showing at least one element of constructive knowledge for accrual purposes. *Gould v. U.S. Dep't of Heath & Human Servs.*, 905 F.2d 738, 745-46 (4th Cir. 1990) (en banc) ("The burden is on plaintiffs to show that due diligence was exercised and that critical information, reasonable investigation notwithstanding, was undiscoverable."). Because it is clear that Jefferson-Pilot does not bear the burden of showing non-compliance with Rule 23 even if it bears the burden of proving its statute of limitations defense on the merits, we need not weigh in on this debate today.

place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary."). There is no reason to believe that the defendant is any better suited than the named plaintiffs to prove whether an issue is common to the class simply because the defendant bears the burden of proving the merits of that issue. We therefore continue, as we must, to allocate to the plaintiff the burden of proving compliance with Rule 23.

Appellants next contend that even if they have the burden of proving that Jefferson-Pilot's statute of limitations defense presents common questions that can be resolved on a class-wide basis, the evidence in this case satisfies this showing. First, Appellants argue that Dr. Norrell's expert report demonstrates that the public was not generally aware of insurance companies' dual-rate practices. That report concludes that "the public, or the average citizen of the United States, including African-Americans, was not generally aware of [these] practices." (J.A. at 70.) Whether the "average citizen" (whoever that is) or "the public" (whoever *that* is) was or was not "generally aware" of insurance companies' dual-rate practices, is, however, irrelevant to the question that the trier of fact will have to answer to resolve Jefferson-Pilot's statute of limitations defense on the merits: Were any of the *individual class members* aware, actually or constructively, outside of the limitations period that Jefferson-Pilot was treating him or her differently from white policyholders? Dr. Norrell's report, therefore, does not support a finding that the trier of fact could resolve this question on a class-wide basis.[12]

Second, Appellants argue that because their depositions show that none of them had actual or constructive knowledge of Jefferson-Pilot's dual-rate practices, it is reasonable to infer that none of the

---

[12]Appellants argue that the district court abused its discretion by failing to mention Dr. Norrell's report in denying their motion for certification. We will not assume, however, that simply because the district court did not mention the report in its written order it failed to consider the evidence. In any event, because we conclude that Dr. Norrell's report would not support a finding that Jefferson-Pilot's statute of limitations defense presented a common issue that could be resolved on a class-wide basis, we need not decide whether the district court (properly) discredited or (improperly) ignored that report.

class members had such knowledge. Even assuming Appellants' argument accurately represents the record, this argument is without merit. As the Supreme Court has consistently pointed out, the question at this stage in the proceedings is not whether the district court will arrive at the same *conclusion* in resolving each class member's accrual issue, but whether it can resolve those issues *in a class-wide manner. See, e.g., Eisen*, 417 U.S. at 177-78. The very fact that Appellants ask us to inspect their individual deposition testimony to determine whether any of them acquired actual or constructive knowledge reveals that resolution of the statute of limitations defense will similarly require the trier of fact to examine the particular circumstances of each individual class member.[13]

Third, Appellants argue that because of the homogeneity of the class, which they describe as being comprised of "blue-collar African-Americans" (Appellants' Br. at 14), any question of whether the members of the class were exposed to sufficient information to cause their claims to accrue can be determined on a class-wide basis. But short of the fact that the class members are all African-American and all purchased industrial life insurance policies from Jefferson-Pilot, the record reveals no information that would allow us to conclude that the class members — 1.4 million African-Americans of all ages and both sexes, who are spread out geographically over four states and

---

[13]Our good colleague in dissent argues that such an inspection of the Appellants' deposition testimony is actually required under *Gariety v. Grant Thornton, LLP*, 368 F.3d 356 (4th Cir. 2004). We cannot agree. As we have discussed, *Gariety* requires the district court to take a "close look" at the issues made relevant by the certification motion; *i.e.*, whether the case can be resolved on a class-wide basis. 368 F.3d at 366 (internal quotation marks omitted). Whether any individual plaintiff was aware of sufficient information to have actual or constructive knowledge is simply not relevant to this question. To hold otherwise, as the dissent suggests, is to say that issues are common if, after individual evaluation, the trier of fact arrives at the same result in each case. Such a holding puts the cart before the horse — the class-action device is not proper simply because the trier of fact may arrive at the *same result* in a large number of cases. Instead, it is a procedural mechanism that allows a large number of individual cases to be resolved in a *common manner*. Evaluating the merits of individual cases is not a common manner of resolving them.

temporally over 62 years — are so homogeneous that media reports and other information about dual-rate practices would affect them all in precisely the same manner. We refuse to make such broad generalizations about the class members based on nothing more than the color of their skin and inferences about their socio-economic status arising from the fact that they purchased an industrial life insurance policy from Jefferson-Pilot. To do so would be to engage in the very brand of stereotyping about which Appellants complain.

Fourth, Appellants argue that because Jefferson-Pilot instructed its agents to conceal the dual-rate practices, we should create a class-wide presumption of unawareness of those practices that Jefferson-Pilot failed to rebut by failing to offer any evidence that any class member knew or should have known about the practices. According to Appellants, this unrebutted class-wide presumption allows the district court to resolve the statute of limitations issue (in their favor) on a class-wide basis.

A presumption arises when proof of one fact gives rise to a "natural inference" that another fact is true and proof of the second fact is difficult to obtain. *See* McCormick on Evidence § 344; *see also Basic Inc. v. Levinson*, 485 U.S. 224, 245 (1988) ("Presumptions typically serve to assist courts in managing circumstances in which direct proof, for one reason or another, is rendered difficult."). We cannot say that the class members' unawareness of their cause of action is the "natural inference" of the defendant's concealment, and, at any rate, evidence of unawareness of the cause of action is information uniquely in the class's possession, a fact that defeats the necessity of a presumption in the class's favor. *See Gunnells*, 348 F.3d at 435-36 (declining to create a presumption of reliance in insurance fraud claim against individual insurance agents because "allegations of . . . misrepresentation offer no substitute for actual reliance"). Moreover, in the analogous context of equitable tolling, we have held that a plaintiff who alleges the defendant concealed the cause of action from him must prove actual concealment to toll the statute of limitations. *Supermkt. of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) (holding that to prevail on an argument that fraudulent concealment tolls the statute of limitations, "the plaintiff must *demonstrate*[, inter alia, that he] failed to discover those facts within the statutory period" (emphasis added)). We see no principled reason

to depart from this holding when the plaintiff argues that concealment prevents accrual.[14]

Our good colleague in dissent does not make any argument (short of simple assertion) that the evidence in this case demonstrates that Jefferson Pilot's statute of limitations defense can be resolved on a class-wide basis, *post* at 37 n.3, yet he repeatedly argues that the district court abused its discretion in denying the certification motion because Jefferson-Pilot failed to show that its statute of limitations defense requires individualized adjudication. We believe, however, that burdens of proof and standards of review matter. As we have demonstrated, the relevant inquiry is not whether *Jefferson-Pilot* has shown that the statute of limitations defense requires individualized adjudication, but whether the district court clearly erred in finding that *Appellants* failed to show that the statute of limitations defense can be resolved on a class-wide basis. For the reasons set forth above, we believe that it did not.

2.

We recognize that parts of our analysis of these issues are in some tension with the Fifth Circuit's decision in *In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004), *cert. denied sub nom. Am. Nat'l Ins. Co. v. Bratcher*, 125 S.Ct. 277 (2004), a decision with facts simi-

---

[14]Appellants also argue that we should create a presumption of concealment that equitably tolls the statute of limitations, thereby making resolution of the statute of limitations defense susceptible to class-wide determination. This argument is different, although subtly so, from the one we address in the text. In the text, we consider (and reject) Appellants' argument that Jefferson-Pilot's concealment creates a class-wide presumption of unawareness that *prevents* accrual. Here, we consider Appellants' argument that Jefferson-Pilot's concealment creates a class-wide presumption of unawareness that *equitably tolls* the statute of limitations once it has accrued. Subtleties aside, we reject the equitable-tolling argument as well. As discussed, under a borrowed statute of limitations, we apply state rules of equitable tolling. *See Wade v. Danek Med., Inc.*, 182 F.3d 281, 289 (4th Cir. 1999). Appellants have cited no state law in support of such a presumption. And to the extent § 1658 applies, as noted in the text, federal equitable tolling principles require proof of unawareness.

lar to those before us. In *Monumental*, the plaintiffs brought §§ 1981 and 1982 claims on behalf of a nationwide class of 5.6 million African-Americans, alleging that the defendants, approximately 280 life insurance companies, had issued dual-rate industrial insurance policies over the course of the preceding 50-60 years. 365 F.3d at 412. The defendants raised a statute of limitations defense and argued that certification was improper because the issue of accrual presented individual issues that were not susceptible to class-wide determination. *Id.* at 420. Reversing the district court's denial of the plaintiffs' motion to certify, the court in *Monumental* held that whether the policyholders had "constructive notice [of their cause of action is] an issue that can be decided on a classwide basis." *Id.* at 421.[15] The court in *Monumental* did not order the district court to grant the certification motion, however, but only remanded for further consideration of the certification issue. *Id.*

While this holding seems apposite to the issue presented here, closer inspection reveals that the court in *Monumental* neither held what Appellants ask us to hold nor even directly addressed the question before us today. In *Monumental*, the insurance companies relied on a theory of constructive notice in support of their statute of limitations defense; *i.e.*, that because of the widespread media coverage of insurance companies' dual-rate practices, the court could find that reasonable persons, including class members, *should have been aware* of sufficient information to provide actual or constructive knowledge of the practices. *Id.* at 421 ("[D]efendants rely on a theory of constructive notice, arguing that widespread media reporting of the issue over the last several decades should have excite[d] the inquiry of a reasonable person. Where events receive widespread publicity, plaintiffs may be charged with knowledge of their occurrence." (alterations in original and citations omitted)). The court held that because the record contained no evidence that media coverage of the issue varied

---

[15]The court in *Monumental* also held that the plaintiffs were entitled to a class-wide presumption of unawareness because the defendants concealed their dual-rate policies. *Id.* at 420 n.22 ("Here, accrual of the statute of limitations is premised on defendants' common practice of concealment, so a presumption of unawareness by the plaintiff class is warranted."). For the reasons already discussed, we respectfully disagree with this holding.

from state to state, the question of whether a reasonable person could be held to have been exposed to sufficient information to provide actual or constructive knowledge presented a question that could be resolved on a class-wide basis. *Id.*[16]

Here, by contrast, Jefferson-Pilot does not argue that the district court should hold that widespread media treatment of the issue provided a reasonable person with sufficient information to give him either actual or constructive knowledge. Instead, it argues that individual class members were *actually exposed* to sufficient information to give them either actual or constructive knowledge of Jefferson-Pilot's dual-rate practices outside the limitations period. Whereas in *Monumental* resolution of the defendants' theory of their statute of limitations defense allowed the district court to create a hypothetical "reasonable person," ask what information that person should be charged with knowing, and then determine whether such information would have given rise to actual or constructive knowledge of the defendant's practices, Jefferson-Pilot's theory, which is focused on the actual information possessed by individual class members, allows no such hypothetical. Instead, the district court here must conduct an individual inquiry into the information each class member actually possessed to determine whether each class member had actual or constructive knowledge of Jefferson-Pilot's dual-rate practices. Whatever the merits of *Monumental*'s holding, and we need not further discuss them here, it is clear that the holding was not based on the legal theory of the statute of limitations defense that Jefferson-Pilot pursued.[17]

---

[16]Although often used loosely, the terms "constructive notice" and "constructive knowledge" are not synonymous. Constructive notice refers to the factual information a reasonable person can be presumed to know because of widespread publicity. Constructive knowledge, by contrast, refers to the legal question of whether knowledge of certain information is sufficient to spur an inquiry into whether a claim exists. In *Monumental* then, the defendant argued that information about its dual-rate practices was so widespread that the plaintiffs should be charged with either actual knowledge of the practices or charged with knowledge of sufficient information to spur a reasonable inquiry.

[17]The dissent suggests that our case is identical to *Monumental* because "Jefferson-Pilot has nothing but widespread media treatment and publicity to rely on for its defense" of actual notice that gave rise either to

Our interpretation of *Monumental* is buttressed by the proceedings on remand in that case. Instead of relying on a theory of constructive notice in support of their statute of limitations defense, as they had before the Fifth Circuit, the insurance companies on remand relied on a theory of actual notice, as Jefferson-Pilot does here. *In re: Industrial Life Ins. Litigation*, MDL No. 1371 and consolidated MDLs, slip. op. at 13 n. 18 (E.D. La. Jan. 11, 2006) (order denying class certification) ("The majority in *Monumental* seemed to assume that the defendants relied solely on an issue of constructive notice, whereas it is clear on remand that the defendants intend to pursue [a] theor[y] of actual notice . . . ."). On this new legal theory, the district court denied the certification motion, finding that "the *plaintiffs* . . . failed to show that the predominance requirement of Rule 23(b)(3) has been satisfied" because "individualized proof is patently required to litigate the defendants' statute of limitations defense." *Id.* at 15 (emphasis added).[18]

---

actual or constructive knowledge. *Post* at 39. There are two problems with this suggestion. First, it assumes that simply because of the color of the class members' skin and their socio-economic status they were each exposed to identical news reports (and the like) regarding insurance companies' race-based practices. For reasons already discussed, we will not indulge this assumption. Second, the dissent again forgets that the burden of proving the propriety of certification rests on the Appellants, not Jefferson-Pilot. It is not Jefferson-Pilot's task to show that its statute of limitations defense presents individualized questions, but Appellants' task to show that it presents common ones.

[18]The dissent contends that the district court in *Monumental* denied the certification motion on remand because the insurance companies "proved" that their statute of limitations defense required individualized adjudication. *Post* at 39 (internal quotation marks omitted). While the dissent accurately represents the district court's finding in that case, it fails to recognize that such a finding was not necessary for its decision. As we have been at pains to emphasize, and as the district court recognized on remand in *Monumental*, the relevant question in considering a certification motion is not whether the defendant has shown certification is improper, but whether the plaintiff has shown certification is proper. If the defendant shows by affirmative evidence that certification is improper, that fact certainly means that the plaintiff has failed to show the opposite, but it does not mean that the motion would have prevailed had the defendant not made such a showing.

### 3.

We therefore conclude that the district court did not clearly err in finding that Jefferson-Pilot's statute of limitations defense presented issues that cannot be determined on a class-wide basis. As our discussion reveals, this conclusion is not born of a view that individual questions necessarily arise any time a defendant raises a statute of limitations defense. Such a holding would be inconsistent with *Gariety*'s requirement that the district court take a "close look" at the facts relevant to the certification question. 368 F.3d at 365 (internal quotations omitted). Indeed, we can easily foresee a situation where the defendant's statute of limitations defense is so dependant upon facts applicable to the entire class, *qua* class, that individual hearings would not be necessary.[19] Appellants, however, have not shown that such facts are present here. To hold otherwise would force Jefferson-

---

[19]One such situation might have arisen here if, for example, Jefferson-Pilot had sent mailings to all of its insureds on a particular date informing them of its dual-rate practices and relied on knowledge of the content of those mailings in arguing its statute of limitations defense, and Appellants argued only that the mailings were insufficient to cause accrual. Another such situation would have arisen if Appellants had shown that Jefferson-Pilot's statute of limitations defense was so patently without merit that the district court could find that the defense was not even a real "issue" in the case. *Cf. Gunnells*, 348 F.3d at 438 (finding that statute of limitations defense presented individual issues where the defense was "*not without merit* and would require individual inquiry in at least some cases").

Our dissenting colleague seems to think that this second situation was satisfied here. He does not argue that the record fails to support the district court's finding that information from numerous sources was available during the relevant period to the class members that "could have alerted" them of Jefferson-Pilot's race-based practices. Rather, he contends that the "could have alerted" standard is incorrect as a matter of law, that the correct legal standard is whether class members had actual or constructive knowledge of Jefferson-Pilot's practices, and that the evidence did not satisfy this standard. *Post* at 36-37. We disagree. The dissent again confuses the merits of Jefferson-Pilot's statute of limitations defense with the certification issue before us today. In evaluating whether Jefferson-Pilot's limitations defense is even an "issue" in the case, the question is not whether the record demonstrates that any particular class members had actual or constructive knowledge of Jefferson-Pilot's race-based practices — as it would be on the merits — but whether the record demonstrates that an argument that any class members had such knowledge is *patently* without merit. We believe that the "could have alerted" standard appropriately captures this inquiry.

Pilot "to defend against a fictional composite without the benefit of deposing or cross-examining the disparate individuals behind the composite." *Broussard*, 155 F.3d at 345. Moreover, assuming the trier of fact found that the hypostatized "blue-collar African-American" knew or should have known of his cause of action, a holding allowing the case to proceed as a class would risk cutting off the rights of those Jefferson-Pilot policyholders who lacked such knowledge to receive an individual adjudication of the merits of their claims.

4.

As noted, the district court did not base its Rule 23(b)(3) denial of Appellants' certification motion solely on its finding that the individual issues presented by Jefferson-Pilot's statute of limitations defense predominated over the common issues present in the case, such as whether Jefferson-Pilot's acts violated §§ 1981 and 1982. Rather, the district court also found that because each class member suffered unique damages, the class's claim for equitable restitution was likewise not susceptible to class-wide determination. Moreover, the district court found that allowing the case to proceed as a class action would present substantial manageability problems at trial. In particular, it focused on the facts that (1) at the individual hearings required for resolution of the statute of limitations defense, the fact-finder would have to apply one of four different states' laws (and, to some of the claims, possibly even federal law, *see* footnote 10) to supply the limitations period and the rules of equitable tolling, and (2) that the fact finder would be unable to evaluate the class's damages on a common basis. Finally, the district court found that the class-action device was not necessarily superior to individual trials. Significantly, the district court noted that the small amount of each class member's claim would not dissuade an attorney from taking class member's individual cases because 42 U.S.C.A. § 1988 (West 2003) allows prevailing plaintiffs in §§ 1981 and 1982 actions to recover attorney's fees.[20]

(Text continued on page 25)

---

[20]The dissent's pronouncement that our decision "means that Jefferson-Pilot Life Insurance Company will never be held to account" for any unlawful discrimination it committed is therefore puzzling. *Post* at 31. The dissent does not attempt to discredit the district court's factual

finding that, based in part because of the lure of attorney's fees, denial of the certification motion is no impediment to resolution of the Appellants' complaint or the complaint of anyone similarly situated. Instead, the dissent argues that this factual finding was "fueled in large measure by the district court's erroneous finding that the statute of limitations defense could not be resolved on a classwide basis." *Post* at 41. This argument, however, is incorrect. Even assuming the district court erred in finding that Jefferson-Pilot's statute of limitations defense presented issues that cannot be resolved on a classwide basis, this (assumed) error had no bearing whatsoever on the district court's finding that individual plaintiffs will be able to pursue individual actions in the absence of a class action.

Moreover, the district court's factual finding on this point is correct. Every potential class member who believes that his §§ 1981 and 1982 rights were violated may file an action in state or federal court. *See Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 235-40 (1969) (holding that state and federal courts have concurrent jurisdiction under §§ 1981 and 1982). If such a party prevails, he may be entitled to punitive damages, *see Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 460-61 (1975), and attorney's fees, *see* U.S.C.A. § 1988 (West 2003); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Although the amount of damages recovered is relevant to the amount of the punitive damage and attorney's fee award, the small amount of damages involved in each individual plaintiff's claims against Jefferson-Pilot would not necessarily provide an obstacle to a sizeable attorney's fee award because the Supreme Court has rejected "the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). Awards of attorney's fees substantially exceeding damages are not unusual in civil rights litigation. *See, e.g.*, *Mercer v. Duke Univ.*, 401 F.3d 199, 211-12 (4th Cir. 2005) (affirming $349,244 in attorney's fees awarded in Title IX suit yielding only nominal damage award); *Wadsworth v. Clindon*, 846 F.2d 265, 266-67 (4th Cir. 1988) (affirming $13,317 in attorney's fees awarded in Fair Housing Act suit yielding $1,000 in compensatory damages); *Northington v. Marin*, 102 F.3d 1564, 1570-71 (10th Cir. 1996) (affirming $93,649 in attorney's fees awarded in § 1983 suit yielding $5,000 judgment); *Estate of Borst v. O'Brien*, 979 F.2d 511, 517 (7th Cir. 1992) (affirming $47,254 in attorney's fees in § 1983 suit yielding $500 in compensatory damages

Appellants neither challenge these additional findings nor do they argue that, even assuming Jefferson-Pilot's statute of limitations defense is an individual issue, common issues still predominate over individual ones. Instead, in contesting the district court's Rule 23(b)(3) ruling, they rely *exclusively* on their argument that Jefferson-Pilot's statute of limitations defense presents common questions that can be resolved on a class-wide basis.[21] Because, as we have shown, the district court's finding otherwise was not clearly erroneous, we agree with the district court that certification was improper under Rule 23(b)(3).[22]

---

and $500 in punitive damages). Indeed, the attentive reader of this opinion will observe that our disposition is to affirm the district court's denial of the certification motion *and remand to allow the Appellants to pursue their individual claims*.

While we are empathetic to Appellants' plight, even assuming that the class-action device is more favorable to Appellants than individual actions would be, it is not the task of the federal court to create class-action rules that favor those with whom we empathize.

[21]Appellants do argue in their reply brief that the district court erred in concluding that the individual issues presented by the statute of limitations defense prevented common issues from predominating, but those arguments come too late. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999) (noting that issues omitted from opening brief are considered waived).

[22]In *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998), we held that "when the defendant's affirmative defenses (such as the statute of limitations) may depend on facts peculiar to each plaintiff's case, class certification is erroneous [under Rule 23(a)]." *Id.* at 342. Similarly, in *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003) we cited *Broussard* for the proposition that when a statute of limitations defense "would require individualized inquiry in at least some cases . . . 'class certification is erroneous' [under Rule 23(b)(3)]." *Id.* at 438. The parties devoted substantial portions of their respective briefs arguing whether these cases set forth a per se rule that certification is improper under Rule 23(a) (*Broussard*) and Rule 23(b)(3) (*Gunnells*) whenever the defendant raises a statute of limitations defense that requires individual hearings. Because Appellants challenged only the district court's finding that Jefferson-Pilot's statute of limitations defense was not a common issue, we need not decide whether *Broussard* and *Gunnells* set forth such a per se rule.

IV.

Appellants also argue that certification was proper under Rule 23(b)(2) because the class seeks an injunction and equitable restitution. Jefferson-Pilot argues that Rule 23(b)(2) certification is improper because Appellants' injunction request is illusory and because Appellants' equitable demand is essentially a request for monetary relief.

A putative class satisfies Rule 23(b)(2) if "[1] the party opposing the class has acted on grounds generally applicable to the class, [2] thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."[23] The 1966 Advisory Committee Notes to this rule provide that it was

> intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. . . . The [Rule] does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages.

Rule 23(b)(2) advisory committee's note. Accordingly, we have held that Rule 23(b)(2) does not "cover cases where the primary claim is for damages, but is only applicable where the relief sought is . . . predominantly injunctive or declaratory." *Lukenas*, 538 F.2d at 595 (internal quotation marks and ellipsis omitted); *see also Zimmerman v. Bell*, 800 F.2d 386, 389-90 (4th Cir. 1986)(holding that Rule 23(b)(2) does not apply where the proposed class seeks "essentially monetary relief," but is "limited to claims where the relief sought was primarily injunctive or declaratory").

The twin requirements of Rule 23(b)(2) — that the defendant acted on grounds applicable to the class and that the plaintiff seeks predominantly injunctive or declaratory relief — make that Rule particularly

---

[23]For a class to be certified under Rule 23(b)(2), it must also satisfy Rule 23(a). As we did in the Rule 23(b)(3) context, we also assume here that Appellants satisfied Rule 23(a).

suited for class actions alleging racial discrimination and seeking a court order putting an end to that discrimination. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples [in which class certification is proper under Rule 23(b)(2)].").[24] There is no legal presumption, however, in favor of certifying cases alleging discrimination. Like any other, such a case must comply with the strictures of Rule 23. *See Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1312 (4th Cir. 1978) (noting that the Supreme Court has dispelled "any notion that cases [alleging racial discrimination] do not require the same inquiry [under Rule] 23 as other types of cases").

The requirement that declaratory or injunctive relief predominate, of course, echoes the predominance requirement of Rule 23(b)(3), and, albeit indirectly, "serves essentially the same function[ ]." *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414-15 (5th Cir. 1998). A class-action claim for monetary relief may present common questions of liability, but, because the goal of the damage phase is to compensate the *plaintiffs* for their *individual injuries*, the claim will generally require the court to conduct individual hearings to determine the particular amount of damages to which each plaintiff is entitled. *See id.* at 413 ("Monetary remedies are more often related directly to the disparate merits of individual claims. As a result, a class seeking substantial monetary remedies will more likely consist of members with divergent interests." (citations omitted)). Where the requested relief is declaratory or injunctive, by contrast, the goal of the remedy phase is either to make a declaration about or enjoin the *defendant's actions* affecting the class as a whole, and individual hearings will not be necessary. *See id.* ("[T]he underlying premise of the [Rule 23(b)(2)] class [is] that its members suffer from a common injury properly addressed by class-wide relief. . . ."). Rule 23(b)(2)'s categorical exclusion of class actions seeking primarily monetary relief, like Rule 23(b)(3)'s predominance requirement, therefore

---

[24]Indeed, Rule 23(b)(2) was created to facilitate civil rights class actions. *See* 7AA Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1775 (3d ed. 2005).

ensures that the class is sufficiently cohesive that the class-action device is properly employed.[25]

Appellants argue that certification was proper under Rule 23(b)(2) because their request for injunctive relief from Jefferson-Pilot's collection of discriminatory premiums predominates over any monetary relief they seek. The district court found, however, and Appellants do not contest, that Jefferson-Pilot declared all of its outstanding industrial life insurance policies "paid up" and that it is, therefore, no longer collecting any premiums on those policies. Appellants' requested injunctive relief is therefore moot and cannot serve as a predicate for Rule 23(b)(2) certification. *See Monumental*, 365 F.3d at 416 ("Of course, certification under Rule 23(b)(2) is appropriate only if members of the proposed class would benefit from the injunctive relief they request.").

This conclusion brings us to the class's request for restitution. Appellants argue that Rule 23(b)(2) authorizes certification when the predominant relief the class seeks is equitable in nature. They also argue that their request is an equitable one. We disagree with both of these arguments.

The text of Rule 23(b)(2) says nothing whatsoever about equitable relief, but authorizes class treatment only when the plaintiff seeks predominantly "injunctive" or "declaratory" relief. "[W]hen the terms of a statute are clear and unambiguous, [as they are here,] our inquiry

---

[25]Unlike Rule 23(b)(3), Rule 23(b)(2) neither requires that absent class members be given notice of class certification nor allows class members the opportunity to opt-out of the class action. *See* Fed. R. Civ. P. 23(c)(2)(A). By requiring that injunctive or declaratory relief predominate, therefore, Rule 23(b)(2) ensures that the benefits of the class action inure to the class as a whole without running the risk of cutting off the rights of absent class members to recover money damages and class members who want individualized evaluation of their claim for money damages. Whereas Rule 23(b)(3) protects these rights by requiring notice and the opportunity to opt-out, Rule 23(b)(2) protects these interests indirectly by allowing certification only when the relief sought is predominantly injunctive or declaratory. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 412-15 (5th Cir. 1998).

ends and we should stick to our duty of enforcing the terms of the statute as Congress has drafted it." *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 305 (4th Cir. 2000) (citations and internal quotation marks omitted)); *Business Guides, Inc. v. Chromatic Communications Enters, Inc.*, 498 U.S. 533, 540 (1991) (applying the plain meaning rule to the Federal Rules of Civil Procedure). To be sure, injunctive and declaratory relief are equitable remedies. But if the Rule's drafters had intended the Rule to extend to all forms of equitable relief, the text of the Rule would say so. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (applying the maxim *expressio unius est exclusio alterius* to the Federal Rules of Civil Procedure). We therefore hold that certification under Rule 23(b)(2) is improper when the predominant relief sought is not injunctive or declaratory, even if the relief is equitable in nature. Because Appellants' injunction request is illusory, their prayer for injunctive relief cannot predominate over their prayer for non-injunctive, non-declaratory equitable relief under any reasonable interpretation of Rule 23(b)(2).

Appellants seek to counter this conclusion by arguing that such a holding is incompatible with Title VII case law where courts, including our own, have found certification proper under Rule 23(b)(2) despite the fact the prevailing plaintiffs are entitled to monetary relief in the form of backpay, which the courts have characterized as a form of equitable relief. *See, e.g.*, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975); *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4th Cir. 1971). But this argument misconstrues our holding: we do not hold, nor have we ever held, that monetary relief is fundamentally *incompatible* with Rule 23(b)(2). Instead, we hold only that relief that is neither injunctive nor declaratory may not *predominate* over the injunctive and declaratory relief in a proper Rule 23(b)(2) action. This holding necessarily contemplates that some non-injunctive or non-declaratory relief, be it equitable or, possibly, legal, may be proper under Rule 23(b)(2), so long as it does not predominate. And in the Title VII context, awards of backpay do not predominate over the injunctive remedies available because the "calculation of back pay generally involves [relatively un]complicated factual determinations and few[ ] individualized issues." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 449 (6th Cir. 2002). In other words, our prior cases have held that Rule 23(b)(2) class certification is proper

in the Title VII context not *because* backpay is an equitable form of relief, but because injunctive or declaratory relief predominates *despite* the presence of a request for back pay.[26]

Even assuming that Rule 23(b)(2) authorizes certification when the class seeks a predominantly equitable remedy, we conclude that Appellants do not seek equitable relief. Restitution can be a legal or an equitable remedy. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212-18 (2002). It is a legal remedy where the plaintiff cannot "assert title or right to possession of particular property, but [he] might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him." *Id.* at 213. It is an equitable remedy, by contrast, "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. . . . But where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor" and the restitution claim is a legal one. *Id.* (internal quotation marks and alterations omitted). Appellants, who, it bears repeating, shoulder the burden of proving certification, have not submitted any evidence — nor have they even argued — that Jefferson-Pilot's race-based premium overcharges are traceable. On the record before us, therefore, we cannot conclude that the class's restitution request is an equitable remedy.

---

[26]Even *Monumental*, on which Appellants so heavily rely in support of their Rule 23(b)(3) arguments, did not hold that Rule 23(b)(2) authorizes class-action suits that only seek equitable relief. Rather, in *Monumental*, the court found that injunctive relief predominated because the plaintiffs sought to compel the defendants to stop collecting premiums, and the record showed that 1 million to 4.5 million of the 5.6 million policies issued were still in effect. 365 F.3d at 418-19.

On remand, the insurance companies in *Monumental* submitted evidence showing that only 2%, or approximately 112,000 of the policies at issue in that case, were still in force and less than 1/10th of 1%, or fewer than 5,600, of those policies were still collecting premiums. *In re: Industrial Life Ins. Litigation*, MDL No. 1371 and consolidated MDLs, slip. op. at 4-5. The district court credited this evidence, and denied certification under Rule 23(b)(2) in part because of its finding that the injunctive relief sought by a "statistically insignificant" number of plaintiffs did not predominate over non-injunctive and non-declaratory relief. *Id.* at 9.

## V.

For the foregoing reasons, we affirm the district court's denial of Appellants' motion for class certification and remand for further proceedings on Appellants' individual claims.

*AFFIRMED AND REMANDED*

MICHAEL, Circuit Judge, dissenting:

The majority's decision to affirm the denial of class certification means that Jefferson-Pilot Life Insurance Company will never be held to account if it discriminated against 1.4 million African-Americans by charging them higher premiums for industrial life insurance than it charged whites. This case makes sense only as a class action because the liability issues are complex and the maximum loss suffered by any class member "is at most, hundreds of dollars." J.A. 280. My point is hardly "puzzling." *See ante* at 23-24 n.20. As the Supreme Court has said, "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

The majority errs by accepting at face value Jefferson-Pilot's argument that class certification is precluded because the Company's statute of limitations defense raises questions that must be decided individually for every class member. The facts tendered at the class certification stage reveal that the Company has at most a defense that the policyholders had constructive knowledge of their injury within the limitations period. The constructive knowledge theory is based solely on the assertion of the Company's expert that there was widespread publicity, both nationally and in the Southeast, about the dual-rate practices of white-owned insurance companies. The record, however, does not contain any facts to suggest that there are individual differences in what class members "could have known" about the dual-rate practices. Thus, the limitations defense can be determined on a classwide basis, and the Rule 23(b)(3) requirement that common issues predominate over any individual ones is met. For this reason, I respectfully dissent.

## I.

The facts alleged, if proven true, portray a grievous wrong against well over a million African-Americans. From the early 1900s until the mid-1970s, Jefferson-Pilot (or its predecessors) charged African-Americans higher premiums than similarly situated whites for industrial life insurance. These policies have a low face value (often less than $500), with premiums collected by company agents at the home of the policyholder on a weekly or monthly basis. The Company sold these policies to 1.4 million African-Americans in Georgia, North Carolina, South Carolina, and Virginia. (Ninety percent of the policies were sold in North Carolina.) In 2000 Jefferson-Pilot declared all active industrial life policies to be paid up, and no further premiums were collected. About 45,000 of the policies were still in effect as of 2004. The plaintiffs allege the Company targeted occupations and geographic areas known to have a high concentration of African-Americans. More specifically, the plaintiffs allege that the Company "targeted low income, impoverished, and disadvantaged African-Americans who typically were unsophisticated with respect to life insurance." J.A. 29 ¶ 17. Finally, it is alleged that African-Americans did not know and could not have reasonably known they were charged higher premiums than whites because the Company engaged in a pervasive scheme to conceal this practice. These discriminatory practices, the plaintiffs allege, violate the Civil Rights Act, 42 U.S.C. §§ 1981-1982. The complaint requests injunctive relief, equitable restitution, and punitive damages. In its defense, Jefferson-Pilot maintains that the higher rates charged to African-Americans were based on mortality tables. The Company also asserts the statute of limitations as a defense.

The named plaintiffs seek to represent a class of 1.4 million African-Americans who bought industrial life insurance from Jefferson-Pilot. When the plaintiffs moved for class certification, a key issue was whether the Company's statute of limitations defense required individualized determinations. At the certification stage, the parties offered the following evidence concerning the nature and merits of the Company's limitations defense. Four potential class members were deposed, and none had actual knowledge of his or her injury outside the limitations period. In addition, both sides submitted expert reports from historians about the availability of public informa-

tion concerning discriminatory life insurance rates. The plaintiffs' expert, Robert J. Norrell, Ph.D., opined that past practices of race discrimination in life insurance underwriting did not become common knowledge among any subset of the American public prior to the year 2000, when this action was filed. Dr. Norrell bases his conclusion on (1) the failure of Jefferson-Pilot and similar companies to inform policyholders of their discriminatory practices and (2) the absence of discussion of the issue in widely read historical literature on American race relations. Although there were some government reports, law review articles, and limited media coverage concerning discriminatory pricing, Norrell found no evidence to show widespread public awareness of the issue. On the other hand, Jefferson-Pilot's expert, Henry M. McKiven, Ph.D., offered the opinion that publicity about discriminatory pricing was widespread nationally and in the Southeast. Dr. McKiven says that this information was available in books, scholarly journals, newspapers, and magazines. He also says that black-owned insurance companies, civil rights organizations, and unions spread the word about discrimination by white-owned insurance companies. McKiven opined that an African-American living in the Southeast could have become aware of the discriminatory pricing. Relying on McKiven's report, the district court found that Jefferson-Pilot's limitations defense would require individualized inquiry for each class member. It therefore held that our cases of *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998), and *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417 (4th Cir. 2003), preclude class certification. The plaintiffs appeal this ruling.[1]

---

[1]Contrary to the district court's view, *Broussard* and *Gunnells* are of little relevance here because those cases presented significant individual issues while this case does not, as I explain in part II. The two cases are worth discussing, however, because the district court's restrictive reading of them led it to the erroneous conclusion that the Fourth Circuit is quick to deny class certification whenever individual issues are present. Both *Broussard* and *Gunnells*, however, are faithful to the text of Rule 23 and allow class certification when questions "common to members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

In *Broussard* a class of former and current Meineke muffler shop franchisees was awarded judgment against the franchisor on various claims, including breach of contract, fraud, and negligence. We reversed certifi-

## II.

### A.

The district court found that Jefferson-Pilot's statute of limitations defense requires individualized proof as to each class member. This

---

cation of the class because none of Rule 23(a)'s four prerequisites was satisfied. The lack of adequate representation was our main reason for reversal, but we also found that the central issues, including whether the statute of limitations was tolled, presented individual questions. We said in *Broussard* that "tolling the statute of limitations on each of [the] plaintiffs' claims depends on individualized showings" because the "representations made to each franchisee varied considerably." 155 F.3d at 342. After concluding that the limitations question was not common to the class, we added the following statement: "As the Ninth Circuit has recognized, when the defendant's 'affirmative defenses (such as . . . the statute of limitations) may depend on facts peculiar to each plaintiff's case,' class certification is erroneous." *Id.* (quoting *In re Northern Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 853 (9th Cir. 1982)). At least two courts of appeals have suggested that in making this statement we were flirting with a *per se* rule against class certification when individual affirmative defense issues are presented. *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 n.4 (1st Cir. 2000); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 161 (3d Cir. 2002). In the same vein, the district court here read the *Broussard* statement to mean "[t]he Fourth Circuit has specifically found that individual issues preclude class treatment." J.A. 292. Although the statement has understandably grabbed attention, it was not our holding. Indeed, if it had been, it would have conflicted with Rule 23(b)(3), which allows class action status for cases presenting individual questions so long as common questions predominate. Our holding in *Broussard* was simply that the class did not meet Rule 23(a)'s requirements.

In *Gunnells* purchasers and beneficiaries of a defunct multi-employer health plan sued the claims administrator for breach of duty and the insurance agents who marketed the plan for negligence, fraud, and breach of contract. We reversed certification of a class action against the insurance agents because the claims of the plaintiffs and the affirmative defenses of the agents, taken together, presented too many issues requiring individualized inquiry. *Gunnells*, 348 F.3d at 434-38. Common questions did not predominate.

In sum, neither *Broussard* nor *Gunnells* stands for the proposition that the existence of individual issues precludes class certification when common issues predominate.

finding is erroneous as a matter of law, and it misled the court to conclude that Rule 23(b)(3)'s predominance requirement cannot be met here. The record shows that the limitations defense presents not individualized questions, but common ones that can be answered on a classwide basis. If the district court had undertaken the rigorous analysis of the record required by *Gariety v. Grant Thornton, LLP*, 368 F.3d 356 (4th Cir. 2004), it could not have concluded that the statute of limitations defense presents individualized questions.

In *Gariety* we noted that "Rule 23(b)(3) on its face requires [a district] court to '*find*[ ] that the questions of law or fact common to members of the class predominate over questions affecting only individual members.'" *Id.* at 365 (emphasis and second alteration in original). In making the necessary findings, a district court is not required "simply to accept the [parties'] allegations at face value," for "sometimes it may be necessary . . . to probe behind the pleadings." *Id.* at 365-66 (citation omitted). Otherwise, there would be nothing to prevent parties from making unsupported allegations in order "to bolster or undermine a finding of predominance." *Id.* at 365 (citation omitted). In all events, a district court has the responsibility "for taking a 'close look' at relevant matters" and "for conducting a 'rigorous analysis' of such matters" before making the findings required by Rule 23(b)(3). *Id.* (citation omitted). We recognized in *Gariety* that findings made under Rule 23 may "overlap [with] findings that will have to be made on the merits." *Id.* at 366. This is permissible, we said, because findings made to resolve class certification questions do not bind the ultimate decisionmaker's finding on the merits. Although the district court in this case went beyond the pleadings and examined the report of the defense expert, the court accepted too readily the expert's unsupported conclusion that it was necessary to make an individual inquiry about each class member's access to the available information. The "rigorous analysis" required by *Gariety* demonstrates that the limitations defense can be determined on a classwide basis.

Jefferson-Pilot raises both actual and constructive knowledge as the basis for its limitations defense, and it argues that neither theory is capable of classwide adjudication. I disagree. With respect to the Company's actual knowledge theory, there is no evidence of actual knowledge to support the district court's finding that individualized

inquiry is necessary to adjudicate the limitations defense. The Company deposed four class representatives, and their testimony reveals that not a single one knew Jefferson-Pilot charged African-Americans higher premiums because of their race.[2] The Company did not seek to establish actual knowledge by deposing additional African-American policyholders in the four states where it sold industrial life policies. In addition, the expert's report cites no evidence to show that any class member actually knew of discriminatory pricing. Thus, the Company has utterly failed to demonstrate that individualized inquiry into actual knowledge is necessary because, as the record stands, no one had actual knowledge. By accepting Jefferson-Pilot's actual knowledge theory at face value, the district court allowed the Company to use an unsupported allegation "to [forestall] a finding of predominance." *See Gariety*, 368 F.3d at 365.

Jefferson-Pilot's more plausible argument is that the class members had constructive knowledge of the challenged conduct outside the limitations period. A federal claim accrues under the constructive knowledge theory when the plaintiff "possessed sufficient facts to . . . have reason to know of the alleged injury." *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1991). The claim accrues, in other words, when the plaintiff "should have known (or been put on inquiry notice of) [his] injury." *Thompson v. Metro. Life Ins. Co.*, 149 F. Supp. 2d 38, 52 n.12 (S.D.N.Y. 2001). The district court found that the Company's expert "presented a strong prediction that there were numerous sources of evidence available during the relevant period which *could have alerted* class members to the fact that the practices now complained of were common in the industry." J.A. 296 (empha-

---

[2]The majority contends that "[t]he very fact that [the plaintiffs] ask us to inspect their individual deposition testimony . . . reveals that resolution of the statute of limitations defense will . . . require the trier of fact to examine the particular circumstances of each individual class member." *Ante* at 16. The majority is mistaken. Inspection of the deposition testimony is necessary under *Gariety*, which requires a district court to take a close look at the evidence proffered at the certification stage "to identify the nature of the issues that actually will be presented at trial." *Gariety*, 368 F.3d at 365 (quoting Fed. R. Civ. P. 23 advisory committee notes). This inquiry assists the court in deciding whether a claim or defense actually presents common questions.

sis added). To begin with, this finding does not incorporate the correct legal standard, which is whether plaintiffs "ha[d] reason to know," *Brooks*, 85 F.3d at 181, or "should have known," *Thompson*, 149 F. Supp. 2d at 52 n.12, of their injury. More importantly, the finding, which is based entirely on the report of the Company's expert, does not establish that adjudication of the constructive notice limitations defense requires individualized proof.[3]

Dr. McKiven, Jefferson-Pilot's expert, asserts there was "widespread publicity," both nationally and regionally, about the race-based "pricing differential." J.A. 82, 101. This assertion suggests that the same kind of information was available classwide. In his report McKiven identifies about forty newspaper and magazine articles and about twenty books, scholarly articles, and reports published over a ninety-five-year period (1906-2001) that discussed dual rates or race discrimination in the sale of insurance. Three of the magazines, *Time* (one article in 1964), *Ebony* (articles in 1946, 1954, 1969, and the early 1970s), and *Black Enterprise* (articles in 1973, 1975, and 1977), have national circulation. A few of the cited newspaper articles appeared in the national press, and a dozen or so articles appeared in southeastern newspapers.

Dr. McKiven also refers to other information on the issue. Black-owned insurance companies encouraged their agents to speak out in churches and in their sales calls about the race-based pricing of white-owned companies. The Congress of Industrial Organizations issued results of a survey indicating that African-Americans did not receive

---

[3]The majority suggests my analysis ignores that the plaintiffs have the burden of establishing that the requirements of Rule 23 are satisfied. *See ante* at 18. To the contrary, my analysis places the burden of producing class certification facts, or pointing out the lack of such facts, in proper context. Here, once the plaintiffs offered facts sufficient to show that there are common questions that predominate, the burden shifted to Jefferson-Pilot to rebut those facts. *See* 3 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 7:23, at 74-75 (4th ed. 2002). The Company's evidence not only failed to show that its statute of limitations defense presented individual questions, its evidence indicated just the opposite — that the defense presents common questions. The Company's evidence thus affirmatively assists the plaintiffs in their burden to show that the action is proper for class certification.

equal treatment from white-owned insurance companies. The NAACP and the Urban League published a few articles in their national magazines addressing the dual-rate practices. Finally, at three congressional hearings testimony was presented on the issue. All of these efforts had a broad regional or national focus.

Dr. McKiven thus concludes that "widespread publicity about [higher life insurance rates for African-Americans] existed in the Southeast" and nationally. J.A. 82. Tellingly, he offers no facts in his twenty-page report to suggest that there are individualized differences in what the class members "could have" known about the dual-rate practices. In other words, McKiven does not say that there was any variation among individual class members as to what they could have known. This lack of variation makes classwide treatment appropriate.

This case, then, is like the case presented on appeal in *In re Monumental Life Insurance Co.*, 365 F.3d 408 (5th Cir.), *cert. denied*, 125 S. Ct. 277 (2004), where the court held that the insurance companies' statute of limitations defense — whether African-American plaintiffs had constructive knowledge that they were discriminated against in the purchase of industrial life insurance — could be decided on a classwide basis. Like Jefferson-Pilot, the insurance companies in the *Monumental* appeal relied on "widespread media reporting" that conveyed the same information about the issue in both national and local markets. *Id.* at 421. The majority's efforts to distinguish the Fifth Circuit's opinion in *Monumental* fail. The majority says:

> Jefferson Pilot does not argue [as did the defendants in *Monumental*] that the district court should hold that widespread media treatment of the issue provided a reasonable person with sufficient information to give him either actual or constructive knowledge. Instead, it argues that individual class members were *actually exposed* to sufficient information to give them either actual or constructive knowledge of Jefferson Pilot's dual-rate practices outside the limitations period.

*Ante* at 20. Thus, the majority concludes that "the district court here must conduct individual inquiry into the information each class member actually possessed to determine whether each class member had actual or constructive knowledge of Jefferson Pilot's dual-rate prac-

tices." *Ante* at 20. The problem with this argument is that Jefferson-Pilot has nothing but widespread media treatment and publicity to rely on for its defense that, in the majority's words, class members were "*exposed* to sufficient information to give them either actual or constructive knowledge." *Ante* at 20. Jefferson-Pilot's expert said the information about the discrimination was "widespread," J.A. 82, and he offers nothing to suggest that the information available varied among class members. The Company has thus offered nothing to show that the limitations defense turns on facts that are specific or individual to each class member. The Company has no choice but to proceed like the insurance companies in the *Monumental* appeal, which relied on "the national media market" and local publications (including newspapers), with both arenas giving the discrimination issue consistent treatment. Because there was no attempt to "geographically splic[e] constructive notice," the Fifth Circuit had "no difficulty concluding that whether plaintiffs were provided constructive notice is an issue that can be decided on a classwide basis." *Monumental*, 365 F.3d at 421. The same reasoning should control here.

The Fifth Circuit remanded the *Monumental* case to the Eastern District of Louisiana for further proceedings on class certification. The plaintiffs then renewed their motion to certify a class against two insurance companies that administrated industrial life insurance policies issued by more than 280 companies. In response the insurance companies offered evidence showing "regional differences in media treatment" of discriminatory pricing and an expert who, according to the Louisiana district court, "*proved that* whether and when any individual would have learned about industrial life insurance pricing practices depends on where they lived, the time period, what newspapers and articles they read, and what oral conversations they had in local churches or through other social networks." *In re Indus. Life Ins. Litig.*, MDL No. 1371 and consolidated MDLs, slip op. at 14 (E.D. La. Jan. 11, 2006) (order denying class certification) (internal quotation marks omitted and emphasis added). As a result, the district court in the *Monumental* remand concluded that individualized proof on the limitations issue was required and that Rule 23(b)(3)'s predominance requirement had not been satisfied. *Id.* at 14-15.

What the defense expert "proved" on remand in *Monumental* underscores what is lacking in this case. Here, the evidence concern-

ing the information about the dual-rate practices focuses on its widespread dissemination rather than on whether the information available varied from place to place or from time period to time period. Accordingly, the district court's finding here — that "numerous sources available . . . could have alerted class members" to the discriminatory pricing, J.A. 296 — does not establish that individualized inquiry is necessary. I would not, however, foreclose the possibility of the district court's later reconsideration of the issue of whether the limitations defense presents individual questions. If discovery on the merits was to show that information about the dual-rate practices varied materially from place to place or from time period to time period in the four relevant states, then the issue of any class certification could be revisited by the district court.

In sum, as the record now stands, the statute of limitations defense presents issues that are common to the class. In addition, the plaintiffs' direct case involves a collective or common claim that the Company engaged in a single, sustained course of intentional discrimination against African-American policyholders by charging them higher rates for industrial life insurance than similarly situated whites. Rule 23(b)(3)'s requirement that common issues predominate is therefore satisfied.

## B.

Rule 23(a)'s prerequisites for a class action, numerosity, commonality, typicality, and adequacy of representation are also satisfied in this case. *See* Fed. R. Civ. P. 23(a). First, there is no dispute that the proposed class meets the numerosity requirement. Second, as I have just demonstrated, the plaintiffs' affirmative case of discrimination and Jefferson-Pilot's statute of limitations defense both present questions that are common to the class. Third, because the claims of the representative parties are the same as the claims of the class, the typicality requirement is satisfied. Fourth, the district court concluded that any potential representational conflicts could be avoided by limiting the class to "insureds," and "if necessary, by subclassing." J.A. 294. Thus, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

\* \* \*

The prerequisites of Rule 23(a) and the predominance requirement of Rule 23(b)(3) have been met. I would therefore vacate the district court's order denying class certification. In its order denying class certification, the district court briefly mentioned "[a]dditional Rule 23(b)(3) [c]oncerns," J.A. 303, relating to whether the class action method would be superior in this case. Because these concerns were fueled in large measure by the district court's erroneous finding that the statute of limitations defense could not be resolved on a classwide basis, I would remand to allow the district court to reconsider the Rule 23(b)(3) superiority issues.